Antonio MARFIA, Plaintiff,

v.

**T.C. ZIRAAT BANKASI, New York Branch, Defendant.**

No. 88 Civ. 3763 (DC).

United States District Court. S.D. New York.

July 1, 1997.

Davis & Eisenberg by Herbert Eisenberg, Robert B. Davis, New York City, for Plaintiff.

White & Case by Glenn M. Kurtz, Cyrus Benson III, New York City, for Defendant.

## AMENDED MEMORANDUM DECISION

CHIN, District Judge.

On June 13, 1997, a jury returned a verdict in this case in favor of plaintiff on his breach of contract claim in the amount of $377,077. In doing so, the jury necessarily found that plaintiff was discharged without cause and that defendant's articulated reason for dismissing plaintiff—that he exceeded the Bank's trading limits—was pretextual. The jury also found, however, that plaintiff had not proven discrimination or fraud.

The issues now before the Court involve pre-judgment interest on the jury's award—specifically, whether interest should be compounded, the rate to be applied, and the methodology to be used to account for the fact that the jury's award compensates plaintiff for the loss of income over a period of ten years.

When the prior judgment was entered in this case, I awarded simple interest at the C.P.L.R. rate of 9%. I am now persuaded to award compounded interest at the rate of 9%.

■ In *Saulpaugh v. Monroe Community Hospital,* 4 F.3d 134 (2d Cir.1993), a Title VII case, the Second Circuit held that pre-judgment interest on a back pay award is intended

> to prevent an employer from attempting 'to enjoy an interest-free loan for as long as it can delay paying out back wages'.... Therefore, ... 'it is ordinarily an abuse of discretion not to include pre-judgment interest in a back-pay award.'... *Given that the purpose of back pay is to make the plaintiff whole, it can only be achieved if interest is compounded.*

4 F.3d at 145 (emphasis added and citations omitted). *See also Sands v. Runyon,* 28 F.3d 1323, 1328 (2d Cir.1994) ("Back pay should be calculated to the date of judgment, and should ordinarily include compound interest.").[1]

Here, plaintiff did not prevail on his Title VII claim. Nonetheless, he prevailed on his breach of contract claim and the jury awarded him back pay. If he is to be made whole, under the reasoning of *Saulpaugh,* his back pay award must include compounded pre-judgment interest.

As to the rate to be applied, the Second Circuit has approved the award of 9% compounded pre-judgment interest in other cases. In *Wilson v. Great American Industries, Inc.,* 979 F.2d 924 (2d Cir.1992), a securities fraud case under federal law, the Second Circuit affirmed the district court's award of 9% compounded pre-judgment interest, holding that such an award "accords with fundamental considerations of fairness and reasonably reflects what plaintiffs should have received absent the fraud." 979 F.2d at 934. *See also Mentor Insurance Co. v. Brannkasse,* 996 F.2d 506, 520 (2d Cir.1993) (holding, in admiralty case, that district court properly exercised its discretion in awarding 9% compounded pre-judgment interest).

■ In the present case, I will apply a 9% rate, for I believe that fundamental considerations of fairness require that Mr. Marfia be given the benefit of any doubt. Mr. Marfia was dismissed in June of 1987, for a purported reason that two different juries have now found to be pretextual. He has been litigating this case ever since—indeed, for over a decade. Much of this delay was attributable to defendant's former general manager, Ozer Ozman, whose failure to complete his deposition and apparent destruction of evidence led to the entry of a default judgment against him. Although the Second Circuit has held that the entry of the default judgment was improper, Mr. Ozman's failures in discovery undeniably led to extensive motion practice and extraordinary delay. Moreover, Mr. Ozman never sought to set aside the default judgment and hence the case was tried originally without him.[2] After he and the Bank successfully appealed from the first judgment, the case was further delayed to permit

---

1. In *Saulpaugh,* the district court had awarded simple interest at the rate of 7.22% per year. The Second Circuit held that the district court had abused its discretion by not compounding. The Second Circuit's only comment on the rate of 7.22% was that it was not "unreasonable." 4 F.3d at 145.

2. Ironically, it became apparent during the second trial that, in retrospect, there was good reason for a default judgment to have been entered against Mr. Ozman. He testified that he took original documents out of Mr. Marfia's personnel file (without leaving copies) in 1989. These were highly relevant documents that had been requested by Mr. Marfia in discovery. Mr. Ozman testified that he "forgot" to give copies of the documents to White & Case in 1988 and 1989, that he took the original documents back to Turkey in 1989, that he kept the documents in a file with other documents at his home for some eight years, and that he finally produced them to White & Case in April of 1997. (Tr. 1019–37). Hence, in addition to whatever mis-

conduct Judge Duffy believed occurred, I am firmly convinced that Mr. Ozman tampered with the evidence by taking original documents and withholding them for some eight years. Moreover, at the second trial Mr. Ozman told a story that is completely implausible. He purports to have interviewed and *offered* a job to an individual of Italian descent as Mr. Marfia's replacement, on the basis of a three-year old resume that he allegedly found stapled to correspondence about Mr. Marfia. Yet, there is no corroborating documentary evidence, such as an updated resume or reference materials or correspondence with the head office, nor is there any corroborating testimony from any other Bank employee who interviewed the person. Most significantly, Mr. Ozman did not mention these critical facts to anyone at White & Case in 1988 and 1989, even though he participated in the preparation of the position statement to the EEOC and in the defense of the case, or in the subsequent nine years of this lawsuit. Indeed, the Bank contends that it was not until April 1997 that Mr. Ozman was asked—purportedly

**154**

Mr. Ozman to complete his deposition, some eight years after it had been started, and to give Mr. Ozman an opportunity for some limited discovery. Because Mr. Ozman's initial failures occurred when he was still an officer and employee of the Bank, it is appropriate to consider these circumstances in determining the rate to be applied.

Finally, I must decide the method to use in applying the interest rate to the damage award. The Bank argues that because the damage award in this case covers a period of ten years, "it is simply too complicated" to calculate interest on the jury's award. The Bank submits that it would be just as fair, and much easier, to calculate interest from an intermediate date—*i.e.,* "a date between accrual and verdict." The Bank's simplified approach would result in a substantially lower award of interest. The Bank's suggestion is rejected.

▮ New York law requires that interest be computed "upon each item from the date it was incurred...." N.Y. C.P.L.R. § 5001(b). Plaintiff's counsel, with the assistance of an accounting firm, has prepared a cogent and reasonable analysis computing interest from the approximate dates the income was lost. Attached to plaintiff's June 23, 1997 letter to the Court are three schedules showing interest calculations on the damages award under three different scenarios. The first schedule, entitled "COMPOUND INTEREST (MONTHLY) ON JURY AWARD," shows the pre-judgment interest owed assuming interest is compounded and applied to unpaid wages as they accrued on a monthly basis. I will use this schedule to calculate the amount of pre-judgment interest due to plaintiff.

Judgment will be entered in the amount of $377,077 with pre-judgment interest compounded at 9% according to the schedule submitted by plaintiff.

SO ORDERED.

▮

for the first time—who he had interviewed to replace Mr. Marfia in 1987. (Tr. 1030–35,