147 F.3d 83
 41 Fed.R.Serv.3d 748
 Antonio MARFIA, Plaintiff-Appellee,
v.
T.C. ZIRAAT BANKASI, New York Branch, Defendant-Appellant,
Ozer Ozman, individually and in his official capacity as
General Manager of T.C. Ziraat Bankasi, New York
Branch, Defendant.
 Docket No. 97-9002.
 United States Court of Appeals,
Second Circuit.
 Argued March 4, 1998.
Decided June 3, 1998.
 
 Herbert Eisenberg, Davis & Eisenberg, New York, New York (Robert B. Davis, on the brief), for Plaintiff-Appellee.
 Glenn M. Kurtz, White & Case, New York, New York (Thomas McGanney, Cyrus Benson, III, on the brief), for Defendant-Appellant.
 Before: NEWMAN and CABRANES, Circuit Judges, and SQUATRITO, District Judge.*
 JOSE A. CABRANES, Circuit Judge:
 
 
 1
 Plaintiff Antonio Marfia brought this action against his former employer, the New York branch of a Turkish bank, defendant T.C. Ziraat Bankasi, New York Branch ("TCZB" or "the Bank"), and its General Manager, Ozer Ozman, after TCZB dismissed Marfia from his position as its Senior Vice President in 1987. Marfia raised federal and state law claims of age and national origin discrimination, as well as state law claims of fraud and breach of an implied contract of employment. The cause was originally tried to a jury in the United States District Court for the Southern District of New York (Denny Chin, Judge ) in May 1995, and the jury found for Marfia on all claims except age discrimination. On appeal, we vacated the judgment of the district court and remanded for a new trial. See Marfia v. T.C. Ziraat Bankasi, 100 F.3d 243 (2d Cir.1996). The cause was retried in June 1997, this time against TCZB alone, the claims against Ozer Ozman having been dropped by plaintiff. The jury found for Marfia on the claim for breach of implied contract, awarding $377,077 in backpay, and found for defendant on the remaining claims. See Marfia v. T.C. Ziraat Bankasi, 968 F.Supp. 152 (S.D.N.Y.1997). After awarding prejudgment interest calculated on a compound basis, see id. at 154, the district court entered a final judgment for plaintiff in the amount of $653,742.97.
 
 
 2
 TCZB now appeals this judgment on the grounds that: (1) the district court should have granted the Bank's motion for judgment as a matter of law ("JMOL") based on insufficiency of the evidence; and (2) the court erred in adopting plaintiff's proposed methodology for calculating prejudgment interest and in calculating prejudgment interest on a compound basis. Because we find the evidence sufficient to prove the existence of an implied contract of employment, we affirm the order of the district court denying defendant's motion for JMOL. However, because under New York law prejudgment interest on an award of damages for breach of contract in the circumstances presented must be calculated on a simple interest basis, we vacate the judgment of the district court insofar as it erroneously calculated prejudgment interest on a compound basis and we remand for recalculation of interest.
 
 I. BACKGROUND
 
 3
 The protracted history of this ten-year-old litigation is recounted in our decision vacating the judgment following the first trial, familiarity with which is assumed. See Marfia, 100 F.3d 243. We provide here only a brief summary of the facts, which in reviewing the denial of defendant's motion for JMOL we present in the light most favorable to Marfia (the non-moving party) giving him "the benefit of all reasonable inferences from the evidence that the jury might have drawn in his favor." Logan v. Bennington College Corp., 72 F.3d 1017, 1022 (2d Cir.1996).
 
 
 4
 Marfia was hired by TCZB as its Vice President for Money Markets in December 1983. Shortly after he was hired, Marfia partially completed and signed an "Application for Employment." The application included, in fine print, a declaration that "I understand and agree my employment is for no definite period and may, regardless of the date of payment of my wages and salary, be terminated at any time without any previous notice." Soon thereafter, TCZB introduced an "Administrative and Personnel Procedures Manual" (the "Manual") of some 200 pages in length. Plaintiff was given the Manual in August or September 1984 by the then-General Manager of the Bank, Michael Baldwin. Plaintiff testified that when Baldwin gave him the Manual, he told him "[t]hat this was the manual by which the business of T.C. Ziraat Bankasi was to be conducted. It was to be applied quite sternly and firmly. It was to be, so to speak, the bible ... by which we would judge our actions and govern our actions within the branch."
 
 
 5
 Section 802 of the Manual, titled "Involuntary Termination," states that an employee whose employment is terminated "may share in the cause[,] or the termination may be due entirely to circumstances outside the control of the employee or the Bank's management." In Section 504, titled "Employee Discipline," the Manual states that "[i]t is the policy of this Bank to administer fair and consistent discipline in order to maintain the safety, productivity and high morale of all employees." Subsection 504A, titled "Responsibility," describes the procedure for taking disciplinary action against an employee. This subsection provides that "[a]fter determining that the [proposed] disciplinary action is consistent [with Bank policy and procedure], the employee's immediate supervisor will normally administer the discipline. No employee will be terminated without prior notification to the General Manager and the prior approval of the Management Committee." Subsection 504B, titled "Initiating Disciplinary Action," provides that "[e]mployees respect fair and firm discipline. Therefore, it is important that discipline be administered only for just and good cause, and that the discipline is appropriate for the offense." Finally, Subsection 504C is designated "Acts Requiring Discipline." This subsection lists various categories of behavior and the appropriate disciplinary action associated with each, although it states that "[t]his list is not all-inclusive and other conduct not listed may result in disciplinary action." Under "Intolerable Acts" (i.e., those acts requiring "immediate dismissal"), the Manual lists "[d]ishonest behavior."
 
 
 6
 In June 1986, Marfia was offered a position by another Turkish bank, Iktisat Bankasi ("Iktisat"), which is located in Istanbul. Marfia accepted Iktisat's offer of a five-year employment contract and submitted his resignation to Ozer Ozman, who was by then the General Manager of TCZB, but subsequently withdrew his resignation and declined the position with Iktisat after Ozman assured him of "lifetime employment" at TCZB. Marfia testified that Ozman told him, "You have here with us employment, secure employment for life, and I want you to rethink this ... and I promise you that you will receive advancement--that you will be promoted to senior vice president and to deputy general manager later--assistant general manager later, and I really want you to think about it." Marfia also testified that because TCZB was a government-owned bank, staffed in part by Turkish civil servants (unlike Iktisat, which was privately owned), he did not find the guarantee of lifetime employment unusual. Marfia explained that he "believed ... quite strongly" that "[b]y virtue of this lifetime employment conception, I was ... much more protected than [by] a five-year contract in a private bank in Istanbul." Marfia remained at TCZB and was eventually promoted to the post of Senior Vice President.
 
 
 7
 On May 29, 1987, Marfia was fired by TCZB. The Bank claims that he was fired because he engaged in transactions that exceeded foreign exchange trading limits during the autumn of 1986, and that his actions constituted "intolerable acts" as defined in the Manual. Marfia claims that his allegedly unauthorized foreign exchange trading was approved by Ozer Ozman, and that Ozman received regular daily reports on Marfia's trading activity.
 
 
 8
 Subsequently, on May 31, 1988, Marfia brought this action alleging, inter alia, that TCZB had entered into an implied contract of employment under which he could not be fired without "good cause," and that the Bank breached this implied contract by dismissing him for what he alleged to be trumped-up reasons. At the close of Marfia's case, and again after the verdict, TCZB moved for JMOL on the breach of implied contract claim. The district court denied both motions, and TCZB now argues on appeal that this was error because the evidence presented at trial was insufficient to prove the existence of an implied contract of employment under New York law. TCZB also challenges the district court's calculation of prejudgment interest.
 
 II. DISCUSSION
 A. Standard of Review
 
 9
 We will reverse the denial of a motion for JMOL only if "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." Samuels v. Air Transp. Local 504, 992 F.2d 12, 14 (2d Cir.1993) (internal quotation marks and citation omitted). This will only be true where there is either "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded jurors could not arrive at a verdict against him." Id. (internal punctuation and citation omitted).
 
 
 10
 B. Preservation of the Motion for Judgment as a Matter of Law
 
 
 11
 Before addressing the merits of TCZB's motion for JMOL, we must first consider the threshold procedural question of whether TCZB has adequately preserved the issue for appellate review. Rule 50(a)(2) of the Federal Rules of Civil Procedure provides that "[m]otions for [JMOL] may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to judgment." Rule 50(b) provides that "[i]f, for any reason, the court does not grant a motion for [JMOL] made at the close of all the evidence, the court is considered to have submitted the action to the jury." However, "[t]he movant may renew its request for [JMOL]" after entry of judgment. Fed.R.Civ.P. 50(b). Marfia argues that TCZB failed adequately to specify the law and the facts upon which it was entitled to JMOL, as required by Rule 50(a)(2). We have held that where a movant fails to move for JMOL with sufficient specificity, JMOL can only be granted on appeal where it would be "required to prevent manifest injustice." See Galdieri-Ambrosini v. National Realty & Dev. Corp., 136 F.3d 276, 287 (2d Cir.1998) (internal quotation marks and citation omitted).
 
 
 12
 At the close of Marfia's case, TCZB "move[d] for a directed verdict on each of the claims," without further comment. The district court exercised its discretion to reserve decision. TCZB never renewed its motion for JMOL at the close of all the evidence, as is ordinarily required by Rule 50(b) in order to preserve the motion for renewal after the jury's verdict. See Cruz v. Local Union No. 3, 34 F.3d 1148, 1155 (2d Cir.1994); Ebker v. Tan Jay Int'l, Ltd., 739 F.2d 812, 823-24 (2d Cir.1984). After the verdict was returned, TCZB sought to renew the motion for JMOL, and the following exchange took place:
 
 
 13
 TCZB: The defendant moves for a judgment notwithstanding the verdict on contract.
 
 
 14
 The Court: This was an issue that was explored the last time around in this respect [i.e., during the first trial]. I don't think there was anything different this time. And accordingly, that motion is denied....
 
 
 15
 TCZB argues that although it did not spell out the legal or factual basis for its motions for JMOL either at the close of plaintiff's case or after the verdict was returned, the basis for TCZB's motion was well-understood by everyone in the courtroom because similar motions had been made before the same judge and the same opposing counsel at the first trial, as the court's allusion to "the last time around" suggests. Moreover, TCZB points out that even if this were not the case, at no time during the district court proceedings did Marfia object to the lack of specificity in TCZB's JMOL motions. This objection was raised for the first time on appeal.
 
 
 16
 We have held that when the party moving for JMOL fails to articulate its motion with sufficient specificity, the non-moving party must object in order to preserve the issue for appeal. See Moretto v. G & W Elec. Co., 20 F.3d 1214, 1220 (2d Cir.1994) (non-movant "did not complain at the time, so it may not now be heard to complain"); cf. Gibeau v. Nellis, 18 F.3d 107, 109 (2d Cir.1994) (noting that appellants failed properly to renew their motion for JMOL at the close of all the evidence, but holding that "because appellees failed to raise this procedural defense in the district court, they are the ones who have waived the issue" on appeal). Because we agree that by failing to object before the district court Marfia waived his objection to the defendant's JMOL motion, we express no view as to the contested issue of whether TCZB violated the specificity requirement of Rule 50(a)(2).[1] Having resolved this procedural question, we turn next to the merits of TCZB's motion for JMOL.
 
 C. Sufficiency of the Evidence
 
 17
 Under New York law, "[a]bsent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." De Petris v. Union Settlement Assoc., 86 N.Y.2d 406, 633 N.Y.S.2d 274, 276, 657 N.E.2d 269 (1995) (citation omitted). However, this is only a "rebuttable presumption." Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458, 457 N.Y.S.2d 193, 198, 443 N.E.2d 441 (1982). "An employee may recover ... by establishing that the employer made the employee aware of its express written policy limiting its right of discharge and that the employee detrimentally relied on that policy in accepting the employment." De Petris, 633 N.Y.S.2d at 276, 657 N.E.2d 269. Where the employee can prove each of these elements--the existence of an "express written policy" and detrimental reliance upon that policy--"the employee in effect has a contract claim against the employer." Id. We have explained that under New York law, "in determining whether [the presumption of employment at will] is overcome, the trier of the facts will have to consider the totality of the circumstances, including the writings, the situation, the course of conduct of the parties and their objectives." Jones v. Dunkirk Radiator Corp., 21 F.3d 18, 22 (2d Cir.1994) (internal punctuation marks, citation, and emphasis omitted).
 
 
 18
 The Bank contends that the district court should have granted its motion for JMOL because Marfia presented insufficient evidence to prove the existence of an express written policy limiting TCZB's right to dismiss employees at will, and "adduced absolutely no evidence that [Marfia] had relied upon the ... Manual in rejecting" Iktisat's offer of employment.[2] See Appellant's Brief at 14. We disagree. While the evidence rebutting the presumption of employment at will is hardly overwhelming, it is nonetheless sufficient to permit a reasonable jury to find that TCZB promised Marfia that he would only be dismissed for cause and that Marfia relied upon this promise when he passed up the job opportunity at Iktisat.
 
 
 19
 1. Existence of Express Written Policy Against Dismissal Without Cause
 
 
 20
 TCZB emphasizes that Section 802 of the Manual, governing "Involuntary Termination," provides that "the termination may be due entirely to circumstances outside the control of the employee or the Bank's management," which it apparently takes to be a statement of the Bank's alleged policy of employment at will. The Bank contends that "[n]owhere does the ... Manual provide that termination shall be only for cause." However, Subsection 504B ("Initiating Disciplinary Action") includes an "express written policy," De Petris, 633 N.Y.S.2d at 276, 657 N.E.2d 269, that "it is important that discipline be administered only for just and good cause." (emphasis added). Attempting to downplay its significance, TCZB argues that this "statement, ... contained in the section addressing discipline, cannot constitute an express limitation on TCZB's right to terminate, which is addressed in a separate section." Appellant's Brief at 23-24 (emphasis in original). This suggestion that "termination" is not a form of "discipline" (and that the "good cause" requirement of Subsection 504B therefore does not apply to termination) is belied by other language contained in the "Employee Discipline" section of the Manual. Specifically, in a subsection detailing the Bank's disciplinary procedures (504A), the Manual provides that "[n]o employee will be terminated without the prior notification to the General Manager and the prior approval of the Management Committee." (emphasis added). The fact that the Manual addresses termination in the section dealing with discipline undercuts TCZB's strained argument that termination is not a form of discipline.
 
 
 21
 In addition to the text of the Manual, the jury was presented with other evidence tending to establish, based on the "totality of the circumstances," Jones, 21 F.3d at 22, the existence of a policy that the Bank would only dismiss Marfia for good cause. For example, the jury could well have credited Marfia's testimony that he was told by Ozer Ozman that he was ensured "lifetime employment" at TCZB. The jury could reasonably have inferred from this statement that the Bank had promised Marfia that his employment would not be terminated without (at least) good cause. Indeed, "lifetime employment" could even reasonably be interpreted to suggest some standard higher than "good cause." Though Marfia's claim of a lifetime contract was rejected by the district court at an earlier stage of this litigation, the Ozman statement nevertheless has evidentiary significance as to the existence of a "good cause" requirement.
 
 
 22
 TCZB counters that Marfia signed an employment "application" which included, in fine print, a declaration that he understood he could "be terminated at any time without any previous notice." We note first of all that while this application indicated that Marfia could be dismissed at any time without notice, it did not specify that he could be dismissed for any reason. In any event, the application--which was only partially completed by Marfia--was merely one factor that the jury was entitled to weigh in evaluating the totality of the circumstances bearing upon the existence vel non of an implied contract. The jury could reasonably have assigned greater weight to the Manual's express provision ensuring that discipline would only be administered "for just and good cause," in light of the evidence that Marfia was told that the Manual was the "bible" by which his actions would be judged.
 
 
 23
 In sum, drawing all reasonable inferences in favor of Marfia, as we must in reviewing the denial of a motion for JMOL, see Logan, 72 F.3d at 1022, the jury was presented with sufficient evidence to establish that TCZB "made [Marfia] aware of [an] express written policy limiting its right" to dismiss him without good cause. See De Petris, 633 N.Y.S.2d at 276, 657 N.E.2d 269.
 
 2. Detrimental Reliance
 
 24
 TCZB correctly points out that the record contains no explicit statement by Marfia that he relied upon the Manual when he turned down Iktisat's job offer. Accordingly, the Bank argues that Marfia has failed to establish the "detrimental reliance" required by New York law to prove the existence of an implied contract of employment. The absence of the talismanic phrase "I relied upon the Manual" does not, however, by itself preclude a reasonable jury from weighing the evidence presented and concluding that Marfia relied upon the Manual. Viewing the evidence in the light most favorable to Marfia, and drawing all reasonable inferences in his favor, there was sufficient evidence to prove detrimental reliance.
 
 
 25
 Marfia testified that he had been told that the Manual contained the rules and standards "by which the business of T.C. Ziraat Bankasi was to be conducted. It was to be applied quite sternly and firmly. It was to be, so to speak, the bible ... by which we would judge our actions and govern our actions within the branch." He further testified to his understanding that "I could be discharged based on the manual that we all abided by." (emphasis added). A reasonable inference from these statements would be that Marfia looked to the Manual as a manifestation of the Bank's policies, that he abided by the Manual, and that he would have relied upon the Manual in choosing between accepting a job at Iktisat or remaining at TCZB. This inference is bolstered by Marfia's testimony, which we must assume to have been fully credited by the jury, that Ozer Ozman promised him "lifetime employment" and that he believed "quite strongly" that he would enjoy lifetime employment at TCZB. A reasonable jury could well have drawn the inference that these assurances by Ozman represented in part an indirect reference to the protections of the Manual and to Bank policy against arbitrary dismissal. While the evidence establishing detrimental reliance by Marfia is indirect, we cannot say that a finding of reliance by the jury "could only have been the result of sheer surmise or conjecture." Samuels, 992 F.2d at 14.
 
 
 26
 Accordingly, because we hold that there was sufficient evidence to prove the existence of an implied contract of employment under New York law, we find no error in the district court's denial of the Bank's motion for JMOL.[3]D. Prejudgment Interest
 
 
 27
 TCZB argues that even if it is not entitled to JMOL, the district court's calculation of prejudgment interest was erroneous as a matter of law. We agree. The district court awarded prejudgment interest at a rate of nine percent calculated on a compound basis. In opting for compound interest, rather than simple interest, the court looked to our decision in Saulpaugh v. Monroe Community Hosp., 4 F.3d 134 (2d Cir.1993). In Saulpaugh, we held that a district court must calculate prejudgment interest in a Title VII case based on a compound rate of interest. "Given that the purpose of back pay is to make the plaintiff whole, it can only be achieved if interest is compounded." Id. at 145. However, federal law does not apply to the calculation of prejudgment interest on supplemental state law claims, such as the breach of implied contract claim under New York law at issue in this appeal. See Mallis v. Bankers Trust Co., 717 F.2d 683, 692 n. 13 (2d Cir.1983) ("Because the applicability of state law depends on the nature of the issue before the federal court and not on the basis for its jurisdiction, state law applies to questions of prejudgment interest on ... pendent [state law] claims.") (citations omitted). The district court therefore erred in applying federal principles governing prejudgment interest.
 
 
 28
 New York courts have held that in a breach of contract action of this sort prejudgment interest must be calculated on a simple interest basis at the statutory rate of nine percent, N.Y. C.P.L.R. § 5004 (McKinney's 1997). See Patane v. Romeo, 235 A.D.2d 649, 652 N.Y.S.2d 142, 144 (3d Dep't 1997) (prejudgment interest in action for breach of contract "must be calculated at the statutory simple annual rate"); Kaufman v. Le Curt Constr. Co., 196 A.D.2d 577, 601 N.Y.S.2d 186, 187, 188 (2d Dep't 1993) (vacating award of compound interest in contract case and stating that "under the circumstances of this case, an award of compound interest would be inappropriate").
 
 
 29
 Plaintiff has not drawn to our attention, and we have not found, any New York case in which a court has awarded prejudgment interest calculated on anything other than a simple interest basis in a breach of contract case, other than cases decided in equitable proceedings. The cases cited by plaintiff in which compound interest was awarded are not on point because New York law explicitly affords the court the discretion to depart from the statutory rate of interest in cases "of an equitable nature." N.Y. C.P.L.R. § 5001(a) (McKinney's 1997). Section 5001(a) provides that
 
 
 30
 [i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.
 
 
 31
 (emphasis added). Inasmuch as New York courts have applied simple rates of prejudgment interest in breach of contract cases, and we are aware of no New York authority for the awarding of compound prejudgment interest in a breach of contract action of this sort, we hold that under New York law the district court should have awarded prejudgment interest calculated at the simple statutory rate of nine percent.[4]
 
 
 32
 TCZB also challenges the methodology used by the district court in calculating prejudgment interest. Although the district court erroneously looked to federal law in applying a compound rate of interest, it correctly looked to state law in its choice of methodology. New York law provides that
 
 
 33
 [i]nterest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item for the date it was incurred or upon all of the damages from a single reasonable intermediate date.
 
 
 34
 N.Y. C.P.L.R. § 5001(b) (McKinney's 1997). The district court adopted the methodology proposed by Marfia, which applied interest "to unpaid wages as they accrued on a monthly basis," Marfia, 968 F.Supp. at 154--a method that the district court found to be a reasonable way of "computing interest from the approximate dates the income was lost," id. TCZB contends that the district court should have calculated prejudgment interest either by reference to a single intermediate date between Marfia's dismissal and the verdict or, as the court did after the first trial, by "dividing the award evenly over the period following [Marfia]'s dismissal, and assuming that each installment was paid on the last day of each year." Appellant's Brief at 32.
 
 
 35
 New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or "a single reasonable intermediate date," which can be used to simplify the calculation. See 155 Henry Owners Corp. v. Lovlyn Realty Co., 231 A.D.2d 559, 647 N.Y.S.2d 30, 32 (2d Dep't 1996). We hold that the district court did not abuse its discretion under New York law in choosing to calculate prejudgment interest on the damages as they accrued on a monthly basis, rather than assuming equal annual payments or a single payment made at an intermediate point.
 
 IV. CONCLUSION
 To summarize:
 
 36
 (1) We affirm so much of the judgment of the district court as denied TCZB's motion for JMOL.
 
 
 37
 (2) We affirm so much of the judgment of the district court as awarded prejudgment interest calculated on the basis of damages as they accrued on a monthly basis.
 
 
 38
 (3) We vacate so much of the judgment as calculated prejudgment interest on a compound basis.
 
 
 39
 (4) We remand the cause solely for the purpose of recalculation of prejudgment interest on a simple interest basis and the entry of a new judgment reflecting the foregoing.
 
 
 
 *
 The Honorable Dominic J. Squatrito, of the United States District Court for the District of Connecticut, sitting by designation
 
 
 [1]
 Although TCZB also failed to renew its motion for JMOL at the close of all the evidence as specified in Rule 50, Marfia never raised this objection, either before the district court or on appeal, and we therefore do not address this issue
 
 
 [2]
 Although the New York Court of Appeals in De Petris referred to an employee's reliance upon an employer's policy "in accepting the employment," 633 N.Y.S.2d at 276, 657 N.E.2d 269, the Bank does not contest--and we see no reason to doubt--that reliance upon such a policy in declining an alternative job offer (such as Iktisat's offer to Marfia) would, if proven, constitute reliance within the meaning of De Petris
 
 
 [3]
 On appeal, the Bank does not appear to challenge the jury's verdict that the Bank lacked good cause to dismiss Marfia
 
 
 [4]
 In fact, after the first trial, the district court did correctly award prejudgment interest at the simple statutory rate of nine percent. See Marfia v. T.C. Ziraat Bankasi, 903 F.Supp. 463, 474 (S.D.N.Y.1995), vacated on other grounds, 100 F.3d 243 (2d Cir.1996)