Domenico ALTAMURO,
Plaintiff–Appellant,

v.

COUNTY OF NASSAU, Azucena Rey, Komal Shah, M.D., Kenneth Skodner, M.D., Vincent Manetti, M.D., Majid Samad, M.D., Sreenivsa Sanikam, M.D., Sarah Reddy, M.D., Krishna Gujavarty, M.D., Michelle Kramer, R.N., C. Burton, R.N., Merna Williams, L.P.N., Carolyn Goodfield, Lucy Catera, R.N., Bessie Doran, L.P.N., Deborah Cavole, R.N., Gil Rivera, Elisa Rahn, Caroline Butler, R.N., John

Doe, 1, John Doe, 2, John Doe, 3, Oneca Heath, M.D., Barbara Kenning, L.P.N., Paulette Brown, L.P.N., Nicole Goffe, L.P.N., Lawrence Lu, L.P.N., Oral Taylor, Joanne Tripp, R.N., and Jerald Newman, in his official capacity as Chief Executive Officer of the Nassau County Medical Center, Defendants–Appellees.

Docket No. 01–7275.

United States Court of Appeals,
Second Circuit.

March 29, 2002.

William Brooks, (Rodney L. Drake, on the brief), Bohemia, NY, for Appellant.

Gerald R. Podlesak, Deputy County Attorney, Mineola, NY, (Lorna B. Goodman, County Attorney of Nassau County; Maureen A. Gest, on the brief), for Defendants–Appellees Nassau County and Individual County Defendants.

Patrick J. Walsh, Assistant Solicitor General, New York, NY, (Eliot Spitzer, Attorney General of the State of New York; Mark Gimpel, on the brief), for Defendant–Appellee Azucena Rey, M.D.

Present FEINBERG, STRAUB and KATZMANN, Circuit Judges.

### *SUMMARY ORDER*

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.

Plaintiff–Appellant Domenico Altamuro ("Altamuro") appeals from a portion of the judgment of the United States District Court for the Eastern District of New York (Leonard D. Wexler, *Judge*) granting the defendants-appellees' Rule 50 motion at the close of the plaintiff's evidence and dismissing his complaint.

Altamuro brings this action under 42 U.S.C. § 1983, claiming that Nassau County ("the County") and numerous individual doctors and nurses violated his constitutional rights by involuntarily confining him at Nassau County Medical Center ("NCMC") and by forcibly restraining and medicating him against his will. He also alleges violations of his rights under the New York state constitution and state statutory law, and brings various tort claims.

The evidence at trial revealed that on February 22, 1997, Altamuro's mother, a registered nurse, telephoned a state-run Mobile Crisis Team and expressed concern about her son's safety. Mrs. Altamuro reported that her son was agitated and behaving inappropriately, would not eat or talk, and had not slept in the past week. At that time, Altamuro was thirty years old and living with his parents. He had a previous history of mental illness and had been involuntarily committed to NCMC in 1986. Altamuro was non-compliant with his medication.

Defendant Azucena Rey, M.D. ("Dr. Rey") responded to Mrs. Altamuro's call. Upon arriving at the Altamuro residence, Dr. Rey found that Altamuro refused to speak with her, appeared preoccupied, and muttered illogically. Dr. Rey concluded that Altamuro was acutely psychotic and that he posed a danger to himself, and she recommended that he be committed involuntarily to NCMC.

At NCMC, medical staff observed that Altamuro was behaving inappropriately, including entering other patients' rooms, and that he appeared to be responding to internal stimuli. Psychiatrist Komal Shah, M.D. ("Dr.Shah") spoke with Altamuro's mother and learned that Altamuro had been agitated and threatening at home. After Altamuro refused to take oral medication voluntarily and could not be reasoned with, Dr. Shah ordered that Altamuro be restrained in "four point" restraints and involuntarily medicated.

During his eleven-day stay at NCMC, Altamuro was forcibly medicated on several other occasions. On one occasion, Altamuro was observed to be behaving in a bizarre fashion and had threatened to cut the staff's throats. He attempted to leave the hospital several times and was prone to violent behavior, at times menacing and yelling at other patients. Once Altamuro began to accept medication voluntarily and showed some mild improvement, he was discharged into his mother's care.

During his testimony at trial, Altamuro contested the accuracy of the medical records' documentation of the foregoing events. He claimed that no doctor spoke with him in the emergency room or advised him of his rights before medicating him, and he testified in essence that in his opinion, he had not been ill or dangerous. In support of this latter proposition, Altamuro offered the testimony of a psychoanalyst, Norman Pearl, M.D. ("Dr.Pearl").

The defendants challenged Dr. Pearl's qualifications as an expert and moved to exclude his testimony both before trial and before he testified. Dr. Pearl admitted during his voir dire that he does not treat patients with medication and that since 1966 he had had no professional experience with the treatment and diagnosis of patients in a psychiatric hospital. The District Court reserved decision on whether to qualify Dr. Pearl as an expert.

Dr. Pearl's substantive testimony consisted of his view that based on the medical records and what Altamuro had told him, the defendants erred in concluding that Altamuro was dangerous and required immediate hospitalization. He also stated that in his opinion, Altamuro did not suffer from mental illness. Although Dr. Pearl testified in a conclusory fashion that the defendants' conduct fell below an acceptable standard, he also admitted that the conclusion that Altamuro was mentally ill was within a range of reasonableness.

At the close of Altamuro's case, the defendants moved under Rule 50(a) for judgment as a matter of law. The District Court dismissed the claims against most of the individual defendants because insufficient evidence was presented connecting them to any wrongdoing. The County, Dr. Rey, and Dr. Shah were among the remaining defendants. After a colloquy with the attorneys, the District Court excluded Dr. Pearl's testimony and granted the Rule 50 motion in its entirety.

Altamuro challenges the District Court's grant of the defendants' Rule 50 motion on several grounds. Altamuro asserts that the defendants' motion lacked the requisite specificity as to the claims the defendants were seeking to dismiss, and that the timing of the District Court's disqualification of Dr. Pearl prevented Altamuro from curing the defect in proof once his expert's testimony was excluded. Altamuro also

argues that sufficient evidence was presented in support of his claims for a reasonable jury to find in his favor. We reject each of Altamuro's arguments.

Before a case is submitted to a jury, a party may move under Federal Rule of Civil Procedure 50(a) for judgment as a matter of law on the ground that there is no legally sufficient evidentiary basis for a reasonable jury to find in favor of the opposing party. The movant must "specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." Fed.R.Civ.P. 50(a)(2). The purpose of the specificity requirement "is to give the other party an opportunity to cure the defects in proof that might otherwise preclude him from taking the case to the jury." *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 286 (2d Cir.1998) (internal quotation marks omitted). A reviewing court must "view the motion in the context of the ensuing colloquy between counsel and the trial court, and if that colloquy fleshes out the motion, it may provide the opposing party with the requisite notice." *Id.* at 287.

At the close of Altamuro's case, the defendants' counsel moved to dismiss the involuntary confinement claim, arguing several times that "not a single specific departure from good and accepted medical practice in their methodology was articulated by [Dr. Pearl]." Counsel also argued that under "the *Rodriguez* standard ... you have to demonstrate with respect to the admission malpractice plus.... The conduct must fall so substantially below good and accepted medical practice." At that point, the District Court asked: "So you're moving for a dismissal of the entire case?" Defendants' counsel responded: "I'm moving for a dismissal as to what was left. Now we're down to the admission

only, since you moved the other defendants out, that's it."

Altamuro's counsel interjected that dismissal of the confinement claim was inappropriate because Altamuro had testified that upon arrival at NCMC he had not been interviewed. Altamuro's counsel and the court then discussed Dr. Pearl's qualifications to testify, including his views about medication of mentally ill patients. The court ultimately disqualified Dr. Pearl under *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and excluded his testimony. The District Court then dismissed Altamuro's federal case *in toto*, and ruled as to his remaining claims that "[t]here isn't a scintilla of proof supporting anything he claims." Altamuro did not seek to reopen the evidence, nor did he ask for a continuance.

Altamuro argues on appeal that the defendants' motion to dismiss the involuntary confinement claim failed to specify the "law and facts" basis for its dismissal. He also argues that the defendants never moved to dismiss the involuntary restraint and forced medication claims. As to the confinement claim, it is clear that Altamuro's counsel had the requisite notice of the claim at issue and the reason for its dismissal because the defendants' counsel specifically referred to the lack of any evidence that the defendants' conduct departed from acceptable practice. *See Galdieri–Ambrosini*, 136 F.3d at 287.

The defendants' counsel was incorrect, however, in suggesting that only the confinement claim remained after dismissal of the majority of the individual defendants, as both Dr. Shah and the County were also implicated in the forced medication and restraint claims. Nonetheless, a fair reading of the colloquy indicates that Altamuro's counsel understood that the forced medication and restraint claims were also

at issue. In discussing with Altamuro's counsel the admissibility of Dr. Pearl's testimony, the court expressed its concern about his views on appropriate medication practices and his lack of experience treating patients in psychiatric hospitals. The District Court went on to find that "[e]ven if he were an expert in the federal cause of action, he admits nobody intended to harm him, nobody did anything wrong. It was their idea of treatment...." Thus, Altamuro's counsel had adequate notice that there existed an alleged deficiency in proof as to whether the defendants had departed from mainstream treatment standards. *Cf. Marfia v. T.C. Ziraat Bankasi,* 147 F.3d 83, 87 (2d Cir.1998); *Galdieri–Ambrosini,* 136 F.3d at 287.

■ In any event, Altamuro's counsel did not object that the defendants' Rule 50 motion lacked specificity either during his argument or after the District Court dismissed all claims. We have held that failure to make a timely objection to the specificity of a motion for judgment as a matter of law waives the right to object on appeal. *See Marfia,* 147 F.3d at 87; *Moretto v. G & W Elec. Co.,* 20 F.3d 1214, 1220 (2d Cir.1994). Because Altamuro's counsel did not lodge a timely objection, his specificity arguments need not be further considered here.

Although Altamuro does not challenge the substantive exclusion of Dr. Pearl's testimony, he does challenge the timing of the District Court's exclusion of the testimony. Altamuro claims that because the disqualification of Dr. Pearl occurred at the same time that the District Court ruled on the defendants' Rule 50(a) motion, he was given insufficient opportunity to cure the defect in proof.

■ Altamuro misapprehends the very purpose of a motion for judgment as a matter of law under Rule 50(a). The rule requires that the motion be made before the case is submitted to a jury, and as noted above, requires that the movant set forth the legal and factual basis for the motion. These requirements are intended to afford the non-movant the opportunity to cure the alleged defects in proof. *See Galdieri–Ambrosini,* 136 F.3d at 286. Here, not only did Altamuro have notice of the basis of the defendants' motion pursuant to the colloquy, but he had ample notice that Dr. Pearl's testimony was in jeopardy because the defendants moved to disqualify Dr. Pearl both before trial and before he testified. Because the court reserved decision on that question, Altamuro cannot argue that he was unfairly surprised when the District Court excluded Dr. Pearl's expert testimony. Altamuro did not seek to re-open his case, nor did he seek a continuance. Therefore, his opportunity to cure the defect in proof has passed.

Finally, Altamuro challenges the substantive dismissal of his case, arguing that he presented evidence sufficient for a reasonable jury to find for him on his claims of involuntary confinement, forced medication, and unlawful restraint, and on his various tort claims. We conclude that the District Court properly entered judgment as a matter of law for the defendants on all counts.

Due process permits the involuntary hospitalization of an individual only if that person is a danger to himself or others. *See Rodriguez v. City of New York,* 72 F.3d 1051, 1061 (2d Cir.1995). The decision to involuntarily commit must be made "in accordance with a standard that promises some reasonable degree of accuracy." *Id.* at 1062. Similarly, a physician will not be liable under section 1983 "for the treatment decisions she makes unless such decisions are 'such a substantial departure from accepted judgment, practice, or standards as to demonstrate that [she] actually

did not base the decision on such a judgment.'" *Kulak v. City of New York,* 88 F.3d 63, 75 (2d Cir.1996) (quoting *Youngberg v. Romeo,* 457 U.S. 307, 323, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)). Altamuro's unlawful restraint claim is evaluated under the same standards as his forced medication claim. *See Youngberg,* 457 U.S. at 323.

New York Mental Hygiene Law § 9.39 provides for involuntary confinement of an individual with a mental illness "which is likely to result in serious harm to himself or others." A "likelihood of serious harm" is defined in relevant part as a "substantial risk of physical harm to himself as manifested ... by ... conduct demonstrating that he is dangerous to himself." New York's statutory scheme "implicitly requires that [the physician's] judgment ... be exercised on the basis of substantive and procedural criteria that are not substantially below the standards generally accepted in the medical community." *Rodriguez,* 72 F.3d at 1063. The definition of generally accepted standards is a question of fact. *See id.* at 1063; *Kulak,* 88 F.3d at 76.

New York law also affords adult individuals the right to refuse medical treatment except "in narrow circumstances, including those where the patient presents a danger to himself or other members of society or engages in dangerous or potentially destructive conduct within the institution." *Kulak,* 88 F.3d at 74 (internal quotation marks omitted). Under New York statutory law, the determination of "dangerousness" is essentially the same as that under Mental Hygiene Law § 9.39. *See id.;* N.Y. Comp.Codes R. & Regs. tit. 14, § 527.8 (2001); *see also* N.Y. Mental Hyg. Law § 33.04 (restraints may be applied "when necessary to prevent a patient from seriously injuring himself or others").

Common to Altamuro's federal and state causes of action is the requirement that the defendants' conduct fall substantially below generally accepted standards in the psychiatric community. Altamuro's medical records documented his doctors' belief that he presented a danger to himself and others and that involuntary commitment, in addition to occasional forced medication and restraint, was warranted. Altamuro's records also show that his doctors complied with the statutory requirement that a hospital physician confirm the need for immediate commitment prior to admission, *see* N.Y. Mental Hyg. Law § 9.37, and that he was informed of his right to legal counsel. *See id.* Although in his testimony Altamuro disputed some of the factual events documented in his chart, he presented no evidence that the defendants' conduct fell substantially below generally accepted standards in the medical community. Even had Altamuro's expert testimony not been excluded, the District Court noted that Dr. Pearl "admit[ted] nobody intended to harm [Altamuro], nobody did anything wrong. It was their idea of treatment...." Under the circumstances, it was not error for the District Court to direct a verdict for the defendants on Altamuro's claims. *See Kulak,* 88 F.3d at 76.

We have examined all of Altamuro's remaining contentions and find them to be without merit. For the reasons set forth above, the judgment of the District Court is hereby AFFIRMED.