James K. LEE, Plaintiff–Appellee,

v.

Michael EDWARDS, Defendant–Appellant.

No. 1583, Docket 95–9180.

United States Court of Appeals, Second Circuit.

Argued June 6, 1996.

Decided Oct. 31, 1996.

damage award is excessive. We vacate that award and remand for a new trial on that issue unless Lee agrees to a remittitur of $125,000, and accepts an award of $75,000.

## BACKGROUND

Based on the evidence presented at trial, the jury could have found the following:

Early in the a.m. on February 6, 1990, James K. Lee was driving his car through a residential neighborhood of Waterbury, Connecticut, and collided with a parked pick-up truck. The truck's owner, Robert Sprano, ran out of his house, screamed at Lee, then went inside to call the police. Lee and his passenger, Dennis McGuire, were both corrections officers; Sprano was a campus police officer.

Norman A. Pattis, New Haven, CT, for Plaintiff–Appellee.

Cheryl E. Hricko, Office of Corporation Counsel, Waterbury, CT, for Defendant–Appellant.

Before: JON O. NEWMAN, Chief Judge, JACOBS, Circuit Judge, and CHATIGNY, District Judge.*

JACOBS, Circuit Judge:

After plaintiff James K. Lee drove his car into a parked truck, defendant Michael Edwards—a police officer in Waterbury, Connecticut—went to the scene, saw that Lee was intoxicated, and tried to arrest him. A confrontation ensued in which Lee suffered cuts and bruises to the head. Lee was charged with assaulting a police officer and resisting arrest, but both charges were later dropped by the State. Thereafter, Lee filed this action against Edwards for, *inter alia*, malicious prosecution, and assault and battery. On the assault and battery claim (as to which no appeal is taken), the jury awarded $1,000. On the malicious prosecution charge, the jury awarded $1 nominal damages and $200,000 punitive damages. The district court denied Edwards' post-trial motions to reduce the punitive award, and Edwards now appeals on the sole ground that the punitive

A few minutes later, Michael Edwards, a rookie Waterbury police officer, arrived on the scene. Lee admitted that he had been drinking that evening, and Edwards proceeded to administer a series of field sobriety tests, during which Lee (feeling no pain yet) clowned for the benefit of the others present, saluting and marching around in mockery of the young policeman's officiousness. Edwards warned that Lee was flouting his authority and disobeying his orders; Lee protested that he was nervous. When Edwards determined that Lee had flunked the sobriety tests, he advised Lee that he was under arrest for driving while intoxicated.

Lee asked to be handcuffed in front, explaining that he was muscle-bound and would suffer discomfort if he were handcuffed behind his back. After cuffing Lee's hands behind his back, Edwards grabbed Lee's left arm, and propelled him toward the police car. When Lee turned around to renew his petition about the handcuffs, Edwards pulled out a baton, asked Sprano "Did you see him swing at me?", and began beating Lee about the head. According to McGuire, Edwards landed eight or nine blows. Lee blacked out after the second or third, and regained consciousness inside Edwards' police car.

* Honorable Robert N. Chatigny, of the United States District Court for the District of Connecticut, sitting by designation.

Lee was taken to the hospital, where he was treated for cuts and contusions on his head. He was then transferred to the police department and released later that same morning.

When Edwards returned to the police station, he filed an incident and offense report recording that Lee had assaulted a police officer and resisted arrest. The State declined to prosecute Lee on either charge. Evidence as to proceedings——if any—— regarding Lee's arrest for driving under the influence was apparently excluded from the jury's consideration.

On August 22, 1991, Lee filed this action under 42 U.S.C. §§ 1983 and 1988, alleging malicious prosecution, use of unreasonable force, and denial of due process. Lee also alleged pendent state law claims of assault and battery, and intentional infliction of emotional distress. At trial, Lee produced medical bills totaling $1,300.77. On June 21, 1995, the jury found for Lee on the malicious prosecution claim and on the assault and battery claim. On the malicious prosecution, the jury awarded $1 nominal damages and $200,000 punitive damages. On the assault and battery, the jury awarded $1,000 in compensatory damages, and determined that punitive damages—in an unspecified amount, as permitted by state law—should be awarded as well.[1] Lee chose not to seek punitive damages for assault and battery.

On June 30, 1995, Edwards filed motions for judgment notwithstanding the verdict, remittitur, and a new trial, on the ground, *inter alia*, that the $200,000 punitive damage award for malicious prosecution was excessive. On October 27, 1995, the district court denied all three motions. As to the punitive damage award, the court concluded:

> While the incident could be perceived by others as relatively minor, the jury obviously felt that defendant's abuse of official power here was intolerable and wished to deal with it severely. The account of plaintiff and defendant left little or no room for innocent misrepresentation. Any

misrepresentation had to be intentional. It is possible that this element of intention—of a police officer *intentionally* submitting a false report that could lead to conviction of a serious felony—is what the jury sought to punish.

(Internal quotation marks and citation omitted.)

## DISCUSSION

The sole issue on this appeal is whether the jury's $200,000 punitive damages award for malicious prosecution is excessive.

Punitive damages are available in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). Although a jury has wide discretion, a district court may refuse to uphold a punitive damage award when the amount is "so high as to shock the judicial conscience and constitute a denial of justice." *Hughes v. Patrolmen's Benevolent Ass'n of New York, Inc.*, 850 F.2d 876, 883 (2d Cir.) (quoting *Zarcone v. Perry*, 572 F.2d 52, 56–57 (2d Cir.1978)), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). "If a district court finds that a verdict is excessive, it may order a new trial, a new trial limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." *Tingley Sys., Inc. v. Norse Sys., Inc.*, 49 F.3d 93, 96 (2d Cir.1995).

We review for abuse of discretion a district court's ruling that a punitive damage award does not "shock the judicial conscience." *Hughes*, 850 F.2d at 883. " 'We must give the benefit of every doubt to the judgment of the trial judge; but surely there must be an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable men may differ, but a question of law.' " *Gasperini v. Center*

---

**1.** In some cases, Connecticut juries do not determine the amount of punitive damages on state law claims; instead, the jury determines whether or not punitive damages should be awarded, and

the judge then fixes the amount. *See, e.g., Fink v. Golenbock*, 238 Conn. 183, 188, 680 A.2d 1243, 1248 (1996).

*for Humanities, Inc.,* — U.S. —, —– —, 116 S.Ct. 2211, 2223–24, 135 L.Ed.2d 659 (1996) (quoting *Dagnello v. Long Island R.R. Co.,* 289 F.2d 797, 806 (2d Cir.1961)).

■ In gauging excessiveness, we must keep in mind the purpose of punitive damages: "to punish the defendant and to deter him and others from similar conduct in the future." *Vasbinder v. Scott,* 976 F.2d 118, 121 (2d Cir.1992) (citing *Smith,* 461 U.S. at 54, 103 S.Ct. at 1639). Thus, our task is "to make 'certain that the punitive damages are reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition.'" *Id.* at 121 (quoting *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 21, 111 S.Ct. 1032, 1045, 113 L.Ed.2d 1 (1991)); *see also BMW of North America, Inc. v. Gore,* — U.S. —, —, 116 S.Ct. 1589, 1595, 134 L.Ed.2d 809 (1996) (punitive damages vindicate a state's legitimate interests in punishment and deterrence).

■ Subsequent to Judge Eginton's ruling in this case, the Supreme Court erected three guideposts that should assist us in the application of our standard, by which we deem excessive a punitive damage award that "shocks our judicial conscience," *Hughes,* 850 F.2d at 883. These guideposts include: (1) the degree of reprehensibility of the tortious conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases. *Gore,* — U.S. at —– —– —–, 116 S.Ct. at 1598–99.[2]

We examine each of the three *Gore* factors in turn.

**2.** Although *Gore* examined the excessiveness of punitive damages awarded in a state court, the universal premise of Supreme Court's due process reasoning suggests that the same considerations apply equally to the review of punitive damages awarded in federal court. *See* — U.S. at —, 116 S.Ct. at 1598 ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose.").

**3.** By waiving his claim to punitive damages, Lee may have been trying to avoid a potential conflict between a finding that punitive damages were

## I. The Gore Factors

### A. Reprehensibility

■ In this context, "reprehensibility" is not a question of whether the conduct is acceptable or unacceptable; the jury's finding of liability has already settled that question. "That conduct is sufficiently reprehensible to give rise to tort liability, and even a modest award of exemplary damages, does not establish the high degree of culpability that warrants a substantial punitive damages award." *Gore,* — U.S. at —, 116 S.Ct. at 1601. Rather, punitive damages "should reflect the enormity of [a defendant's] offense." *Id.* at —, 116 S.Ct. at 1599 (internal quotation marks and citation omitted).

The Supreme Court in *Gore* noted that reprehensibility is "perhaps the most important" factor in assessing a punitive damage award. *Id.* The Court then identified certain types of "aggravating factors" that are "associated with particularly reprehensible conduct" and contribute to the sense that "some wrongs are more blameworthy than others." — U.S. at —, 116 S.Ct. at 1599. Aggravating factors include (1) whether a defendant's conduct was violent or presented a threat of violence, (2) whether a defendant acted with deceit or malice as opposed to acting with mere negligence, and (3) whether a defendant has engaged in repeated instances of misconduct. *Id.* at —– —– —–, 116 S.Ct. at 1599–1600.

*1. Violence.* Although the jury found Edwards liable for punitive damages on the assault and battery, Lee elected to waive that claim, with good reason.[3] So the punitive

warranted on the assault and battery claims and a finding of no liability on the unreasonable force claim. To support a finding of assault and battery under Connecticut state law, the jury could have found that Edwards acted either negligently, wantonly, or intentionally. An award of punitive damages, however, requires a finding of intent. *See Markey v. Santangelo,* 195 Conn. 76, 78, 485 A.2d 1305 (1985). Additionally, to find that Edwards had used unreasonable force under § 1983, the jury had to find that Edwards acted intentionally. *See Brower v. County of Inyo,* 489 U.S. 593, 597, 109 S.Ct. 1378, 1381–82, 103 L.Ed.2d 628 (1989).

damages at issue on this appeal were awarded solely on account of malicious prosecution.

The malicious prosecution entailed little overt violence. Lee's troubles with the law lasted all of two hours: he was handcuffed by Edwards, placed into the police cruiser, taken to the hospital, and then taken to the police station, where he was charged with assault on a police officer and resisting arrest. These charges were later nolled. In any event, the jury (which merely awarded nominal compensatory damages) was obviously unimpressed by Lee's claim to have suffered harm by reason of being prosecuted maliciously.

There is, however, an element of real and threatened force that could have aroused the jury. As a police officer, Edwards exercised an authority backed by the weight and force of state power. His decision to charge Lee falsely was implemented merely by an entry on a form, but that act nevertheless had the power to set into motion the coercive apparatus of the state, which is ultimately rooted in a willingness to use force. *Cf. Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 392, 394, 91 S.Ct. 1999, 2002, 2003–04, 29 L.Ed.2d 619 (1971) (Agent using official authority "possesses a far greater capacity for harm" than a private individual; "mere invocation of federal power by a federal law enforcement official" normally renders attempts to resist futile). In Lee's case, this threat of force was attenuated and short-lived, but a jury could properly recognize it, and conclude that malicious prosecution by a police officer is egregious and reprehensible. It may be that the offenses falsely charged are minor when compared with drunk driving, and that the false charges therefore entailed no great incremental threat of state power. But the jury had no occasion to consider that: there is no record evidence that Lee was charged with the drunk driving offense that he uncontestedly committed, and the district court sustained an objection to a question put to

Lee concerning alcohol counseling. (No appeal is taken as to the admissibility of the drunk driving charges or proceedings.)

■ *2. Deceit or malice.* Edwards' conduct was marked by malice. In order to find Edwards liable for malicious prosecution under § 1983, the jury had to find, *inter alia,* that "the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *McHale v. W.B.S. Corp.,* 187 Conn. 444, 447, 446 A.2d 815, 817 (1982) (defining malicious prosecution under Connecticut law).[4] Edwards moved post-verdict for judgment as a matter of law, on the ground that "there was no evidence presented that [Edwards] acted with malice," but the district court denied the motion, and Edwards is not contesting that ruling on appeal.

*3. Repeated misconduct.* A finding of repeated misconduct is supportable by testimony in the trial transcript as to other complaints against Edwards charging excessive force. Although there is no evidence concerning any formal investigation of these complaints, the jury did hear testimony from Edwards about them.

After considering these three aggravating factors, we believe that the reprehensibility of Edwards' conduct can support a substantial punitive damage award in this case.

### B. *Ratio to Actual Harm Inflicted on the Plaintiff*

■ In considering the ratio between a punitive damage award and the actual harm inflicted, the second *Gore* factor, "the proper inquiry is whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually occurred." *Gore,* —— U.S. at ——, 116 S.Ct. at 1602 (internal quotation marks and citations omitted). It therefore seems to be a great problem for the plaintiff that the

---

The jury found no liability on the unreasonable force claim, yet found that punitive damages were warranted on the assault and battery claims. Thus, the jury either found that Edwards was negligent, and awarded punitive damages mistakenly, or found that Edwards had acted intentionally and mistakenly failed to find him

liable on the unreasonable force claim. By waiving punitive damages, Lee skirted this issue.

4. We borrow the elements of a § 1983 action from analogous state law. *Cook v. Sheldon,* 41 F.3d 73, 79 (2d Cir.1994).

punitive damage award is 200,000 times greater than the nominal compensatory award. Still, the Supreme Court has stressed that the reasonableness of such a relationship is no "simple mathematical formula":

> Indeed, low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine.

*Id.*

In *Gore*, the Court found the 500 to 1 ratio in that contract dispute to be "breathtaking." —— U.S. at ——, 116 S.Ct. at 1602. But that observation does not necessarily control the fair ratios in a § 1983 case. We have said that punitive damages may be awarded in a § 1983 case, even if the compensatory damages are only nominal. *See King v. Macri*, 993 F.2d 294, 297–98 (2d Cir.1993) (citing cases). The Supreme Court's observations in *Gore* reinforce that view: violations of civil rights may very well be "particularly egregious" acts that result in only "a small amount of economic damages" or injuries whose monetary value is "difficult to determine." *Gore*, —— U.S. at ——, 116 S.Ct. at 1602. Because the compensatory award here was nominal, *any* appreciable exemplary award would produce a ratio that would appear excessive by this measure.

In *Gore*, a 500 to 1 ratio was "breathtaking." However, in a § 1983 case in which the compensatory damages are nominal, a much higher ratio can be contemplated while maintaining normal respiration. Since the use of a multiplier to assess punitive damages is not the best tool here, we must look to the punitive damage awards in other civil rights cases to find limits and proportions. We do that in Section II, in which we determine the proper amount of the remittitur:

## C. Comparison to Civil or Criminal Penalties for Comparable Misconduct

When penalties for comparable misconduct are much slighter than a punitive damages award, it may be said that the tortfeasor lacked "fair notice" that the wrongful conduct could entail a substantial punitive award. *See Gore*, —— U.S. at ——, 116 S.Ct. at 1603; *Patton v. TIC United Corp.*, 77 F.3d 1235, 1244 (10th Cir.1996).

According to Lee, Edwards' conduct could have exposed him to a charge of making a false statement, a class A misdemeanor. *See* Conn.Gen.Stat.Ann. § 53a–157 (West Supp. 1996). If Edwards were convicted of that offense, he would have faced imprisonment of up to one year, and/or a fine of up to $2,000. *Id.* §§ 53a–36, 53a–42 (West 1994). A year's imprisonment is certainly a serious sanction, although the maximum fine of $2,000 gives little warning that the offense could entail a $200,000 civil award.

If anything, we believe that the civil and criminal penalties understate the notice, because the misconduct at issue here was committed by a police officer. We will assume that Edwards' training as a police officer gave him notice as to the gravity of misconduct under color of his official authority, as well as notice that such misconduct could hinder his career. At the same time, although Edwards did have some notice as to the gravity of his conduct, nothing could conceivably have prepared him for a punitive damage award amounting to the sacrifice of the better part of a policeman's after-tax pay for a decade.

Examining the three *Gore* factors together, we see circumstances that might support a substantial punitive damage award. First, Edwards brought to bear against Lee the weight of Edwards' official position, acted maliciously, and had previously engaged in analogous misconduct—enough to indicate a degree of reprehensibility. Second, the nominal compensatory damage award renders the use of a ratio to limit punitive damages ineffective. Third, although the criminal and civil penalties for comparable conduct are middling, Edwards' training as a police officer provided him with some notice of the gravity of his conduct.

In short, we believe that the reprehensibility of Edwards' conduct and the extent to which he had notice of potential penalties support the award of a substantial multiple, but we conclude that the district court exceeded its discretion in thinking that these factors support the magnitude of the award on the malicious prosecution claim in this case. We now turn to other police misconduct cases for assistance in determining the proper remittitur.

## II. *Remittitur*

Edwards does not argue on appeal that it was error to allow any punitive damages; rather, Edwards argues that this particular award was excessive. Lee, for his part, argues that the $200,000 is comparable to other cases of police misconduct. To sort this out, it is appropriate for us to examine punitive damage awards in similar cases. *See Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir.1990). It is clear that in police misconduct cases sustaining awards of a similar magnitude, the wrongs at issue were far more egregious.

For example, plaintiff Ismail suffered two displaced vertebrae, a cracked rib, and serious head trauma at the hands of the defendant police officer, was held in custody for approximately 60 hours, and was made to stand trial on three criminal charges (on all of which he was acquitted). *Id.* at 185. Ismail sued the police officer and the municipality under 42 U.S.C. §§ 1981 and 1983, and asserted pendent state claims for assault, battery, false arrest, malicious prosecution, and abuse of process. *Id.* The jury found the officer liable on all claims except the § 1981 claim and the assault claim, and awarded $650,000 in compensatory damages and $150,000 in punitive damages. The district court ordered a remittitur, and we reinstated the jury's award, citing, in part, the facts that Ismail was forced to undergo a criminal prosecution and that he suffered permanent physical and emotional injury. *Id.* at 187.

In *O'Neill v. Krzeminski*, 839 F.2d 9, 10 (2d Cir.1988), two police officers (one wielding a blackjack) struck O'Neill about the face and head while he was handcuffed; a third officer watched. The officers then dragged O'Neill by the throat to a holding cell, and left him there, bleeding. One of the officers entered the cell some time later and screamed at O'Neill. *Id.* O'Neill sued the officers under § 1983 for excessive use of force and for denying him medical attention. *Id.* On review, we upheld the jury's punitive damages award of $185,000, emphasizing both that the plaintiff was defenseless during the attack, and the district judge's observation that " 'in eight years of jury trials, ... none so shocked the conscience of this court as did this one.' " *Id.* at 13.

In both *Ismail* and *O'Neill,* we upheld the punitive damage awards, but we did not fix any ceiling on recovery. *See Ismail*, 899 F.2d at 187 ("[O]ur task is not to balance the number of high and low awards and reject the verdict ... if the number of lower awards is greater."). The upper limits of exemplary damages can be seen more clearly in the facts of a case in which the jury award was held to be excessive. In *King v. Macri*, 993 F.2d 294 (2d Cir.1993), the plaintiff had entered a courtroom, and left after being told that his attorney was not there. A court security officer followed King out of the courtroom and demanded to see his identification. The officer ripped King's driver's license to pieces, tried to arrest him and precipitated a struggle. The officer continued to punch King after he was handcuffed and lying on the ground. *Id.* at 296. King was then strip-searched and delivered to Rikers Island that evening, where he remained in pre-trial detention for two months. *Id.* at 297. All charges were either dropped prior to trial, dismissed, or resolved by a jury verdict of acquittal. *Id.* King brought a § 1983 action, alleging excessive use of force, arrest without probable cause, and malicious prosecution. The jury found the officer liable on all three counts, and awarded punitive damages on each individual claim, for a total of $175,000. *Id.* On appeal, we reduced the award to $100,000, noting that the separate punitive awards on each claim might have contributed to an excessive total award. *Id.* at 299.

Lee's $200,000 punitive damage award—solely for malicious prosecution—exceeds the punitive damages awarded for the

numerous and severe physical and psychological harms suffered by each of the plaintiffs in *Ismail, O'Neill,* or *King.* In light of those awards, we can identify no fact or circumstance in the record of this case that could remotely support a $200,000 award. If King could receive no more than $100,000 for two months at Rikers Island, then the proper award for two hours of discomfort should not exceed a tithe of that amount. We hold that the $200,000 punitive damage award in this case is excessive.

We recognize that one purpose of punitive damages is deterrence, and that deterrence is directly related to what people can afford to pay. *See Vasbinder,* 976 F.2d at 121. In this case, as a result of a stipulation between the parties, the jury was told that all damages would be paid by the City of Waterbury. Perhaps for that reason, the defense proffered no evidence of Edwards' income or net worth. If the jury had remained unaware of the City's indemnity, and had been apprised of Edwards' income and net worth, then (assuming that Edwards is not independently wealthy) we think that the punitive damage award would have been far smaller. However, the stipulation presumably reflects a calculation by the defense that the jurors would be tight-fisted with the taxpayers' money and a calculation by the plaintiff that a big verdict payable by a municipality could be more easily won at trial and defended on appeal. We are disinclined to relieve the defense from the consequences of that choice, or to facilitate a new trial in which the defense can repair a tactical error. Consequently, we are comfortable here with a punitive damage award that is higher than we might otherwise approve. Therefore, unless Lee agrees to remit $125,000 and to accept a $75,000 punitive damage award, we order a new trial on that issue.

## CONCLUSION

In light of the *Gore* factors and our comparison of this award with other punitive damage awards, we conclude that Lee's $200,000 punitive damage award for malicious prosecution is excessive and that the district court abused its discretion in refusing to grant a new trial on that issue. We vacate

that portion of the judgment and remand for a new trial on that issue, unless Lee agrees to remit $125,000, and accepts a punitive damage award of $75,000. *See Vasbinder v. Scott,* 976 F.2d 118, 122 (2d Cir.1992) (citing *Phelan v. Local 305 of the United Ass'n of Journeymen,* 973 F.2d 1050, 1064 (2d Cir. 1992), *cert. denied,* 507 U.S. 972, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993)).