**Robert J. STACK, Plaintiff**

v.

**Andrew JAFFEE, and Lourdes Perez, Defendants**

**No. 3:01–CV–260 (EBB).**

United States District Court, D. Connecticut.

July 30, 2003.

Erin I. O'Neil–Baker, James S. Brewer, Brewer & O'Neil, West Hartford, CT, for Plaintiff.

William J. Melley, III, Law Offices of William J. Melley, III, Hartford, CT, Jose V. Martinez, Brookfield, CT, for Defendants.

### RULING ON APPLICABILITY OF STATE FARM AUTOMOBILE IN-SURANCE COMPANY v. CAMP-BELL, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003)

ELLEN BREE BURNS, Senior District Judge.

On June 4, 2003, the jury in this case found Defendant Andrew Jaffee ("Jaffee") liable to Plaintiff Robert J. Stack ("Stack") for: (1) violation of Stack's First Amendment rights; (2) the intentional infliction of emotional distress; and (3) defamation. It awarded $2,000 in compensatory damages for all claims and $200,000 in punitive damages for violation of his First Amendment rights. Post-trial, this Court ordered the parties to brief the applicability of the most recent Supreme Court pronouncement on punitive damages, found in *State Farm Automobile Insurance Company v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). In *State Farm*, the Supreme Court held that an award of $145 million in punitive damages on a $1 million compensatory judgment violated the Due Process clause of the Fourteenth Amendment, as excessive and shocking to the judicial conscience.

The Supreme Court recognized in *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001), that in our judicial system compensatory and punitive damages, although usually awarded at the same time by the same decisionmaker, serve different purposes. Compensatory damages "are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's conduct." *Id., citing* Restatement (Second) of Torts § 903, pp. 453–54 (1979). By contrast, punitive damages are aimed at deterrence and retribution. *Cooper Industries*, 532 U.S. at 432, 121 S.Ct. 1678. *Accord BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) ("Punitive damages may properly serve a broader function; they are aimed at deterrence and retribution.") (refusing to sustain a punitive damages award of $2 million which accompanied a compensatory verdict of $4,000).

The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor. *Gore*, 517 U.S. at 562, 116 S.Ct. 1589. To the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property. *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 42, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) (O'Connor, J., dissenting), *cited in State Farm*, 123 S.Ct. at 1520.

In light of these concerns, the *Gore* Court instructed courts reviewing punitive damages to consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by plaintiff and the punitive damages awarded; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Gore*, 517 U.S.

at 575, 116 S.Ct. 1589. The Supreme Court reiterated the import of these three guideposts in *Cooper Industries* and *State Farm*.

The Court will discuss the *Gore* factors seriatim:

**A. *Reprehensibility***

In this context, "reprehensibility" is not a question of whether the defendant's conduct was acceptable or unacceptable: the jury's finding of liability has already settled that question. *Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir.1996).

"[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore*, 517 U.S. at 575, 116 S.Ct. 1589, *cited in State Farm*, 123 S.Ct. at 1520. The Supreme Court has elucidated several factors in determining reprehensibility: whether the harm caused was physical as opposed to economic; whether the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; whether the conduct involved repeated actions or was an isolated incident; and whether the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Gore*, 517 U.S. at 576–77, 116 S.Ct. 1589; *State Farm*, 123 S.Ct. at 1521.

■ In the present case, whether the harm to Stack was strictly physical or strictly economic is not necessarily answered with ease. Jaffee was aware that Stack had been threatened with physical violence, that Stack was so intimidated by these threats of physical violence that he sought a restraining order against defendant Lourdes Perez, and that Stack pleaded with Jaffee for protection when Jaffee demanded that Stack come to the Hartford Police Department in order to pursue his complaints. Jaffee refused any protection to Stack, and unlike Sergeant Calderone,

who finally took over and did a thorough investigation of Stack's allegations, Jaffee refused to meet Stack anywhere other than at police headquarters. Thus, Jaffee's conduct had the potential for physical harm to Stack, based on defendant Perez' threats of violence.

Similarly, the Court believes that Jaffee's attitude and conduct evidenced a reckless disregard for Stack's safety, in that he continued to require Stack to come to police headquarters, even though he knew Stack was afraid to do so, which fear was not totally groundless. Further, Jaffee's actions in the manner in which he "handled" the investigation, were intentional, and not a mere mistake.

Thus, the first *Gore* guidepost supports some award of punitive damages to Plaintiff.

### B. *Ratio to Actual Harm*

In considering the ratio between a punitive damages award and the actual harm inflicted, the second *Gore* factor, "the proper inquiry is whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually occurred." *Gore,* 517 at 581, 116 S.Ct. 1589. It therefore seems to be a great problem for Plaintiff that the punitive damages award is 100 times greater than the compensatory award. "Our jurisprudence and principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm,* 123 S.Ct. at 1524.

> In *Haslip,* in upholding a punitive damages award, we concluded that an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety. 499 U.S. at 23–24, 111 S.Ct. 1032. We

cited that 4–to–1 ration again in *Gore,* 517 U.S. at 581, 116 S.Ct. 1589. The Court further referenced a long legislative history, dating back over 700 years and going forward to today, providing for sanctions of double, treble, or quadruple damages to deter and punish. *Id.* at 581, 116 S.Ct. 1589. While these ratios are not binding, they are instructive.

*State Farm,* 123 S.Ct. at 1524.

However, this analysis does not always end the story because "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." *Gore,* 517 U.S. at 582, 116 S.Ct. 1589.

The Second Circuit has concurred with this reasoning in Section 1983 cases. It has held on several occasions that punitive damages may be awarded in a Section 1983 case, even if the compensatory damages are only nominal. *See King v. Macri,* 993 F.2d 294, 297–98 (2d Cir.1993) (collecting cases).

Because the compensatory award in the present case was de minimus, any appreciable award of punitive damages would produce a ratio that would appear excessive by the use of the ratio method.

Since the use of a multiplier to assess punitive damages is not the best tool here, the Court must look to other civil rights cases to find limits and proportions. We first, however, must turn to the third *Gore* factor.

### C. *Comparison to Civil or Criminal Penalties*

The closest the Court can find in its research as to comparable misconduct is

that the allegations made to the Hartford Courant, the FBI and Stack's supervisor could hypothetically subject ·Jaffee to liability for the making of a false statement, a class A misdemeanor. *See* Conn.Gen.Stat. § 53a–157. Were Jaffee to be convicted of such an offense, he could face imprisonment of up to one year and/or a fine of $2,000. This maximum fine gives little warning that a comparable civil rights violation could entail a $200,000 punitive award.

An application of the three *Gore* factors convinces this Court that some amount of punitive damages is due Stack. Punitive damages have been allowed in conjunction with comparative compensatory awards. see. e.g. *Ikram v. Waterbury · Board of Educ.,* 1997 WL 597111 at \*3–4 (D.Conn. Sept.9, 1997) (compensatory award of $100,000 reasonable in First Amendment retaliation claim, with $150,000 punitive damages awarded against individual defendants).

However, there are but a few cases in which a de minimus award of compensatory damages permits a comparatively enormous award of punitive damages. In *Provost v. City of Newburgh,* 262 F.3d 146 (2d Cir.2001), the Second Circuit upheld a nominal damages award of $1.00 and a punitive damages award of $10,000. This case is not very informative, however, in that the district court in that case instructed the jury that it could consider the wealth of the defendant in ordering such an award and this jury instruction was the basis for the appeal. The Second Circuit noted in dicta, however, that, under *Gore,* the $10,000 award "approaches the limits of what we would deem consistent with constitutional constraints." *Id.* at 164. In *Lee v. Edwards,* 101 F.3d 805 (2d Cir. 1996), the jury awarded nominal damages of $1.00 for malicious prosecution and punitive damages in the amount of $200,000 for the same tortious conduct. The Sec-

ond Circuit compared the award to others involving the use of excessive force and, after such review, ordered a remittitur of $125,000. The Court explained that, had the parties not stipulated, in the presence of the jury, that the municipality involved would be paying any punitive damages award, it believed "that the punitive damages award would have been far smaller." However, the Court was "disinclined to relieve the defense from the consequences of that choice" and, accordingly, awarded "a punitive damage award that is higher than we might otherwise approve." *Id.* at 813. *See also Tolbert v. Queens College,* 242 F.3d 58 (2d Cir.2001) (upholding nominal damages of $1.00 and punitive damages of $50,000; however, constitutional nature of punitive damages not discussed because not preserved for appellate review).

■ In the present case, the majority of Stack's distress was caused by the outrage and humiliation he suffered due to the action— or, rather, inaction,— of Jaffee in failing to even remotely investigate Stack's complaints. Jaffee did no work on Stack's file from early August through December, when finally ordered to do so after the publication of the Hartford Courant article. Although Jaffee had substantial evidence that co-defendant Perez had lied under oath and made serious physical threats against Stack, Jaffee, with no authority, wrote an inappropriate and unwarranted letter to the Ayer District Court, stating that there was no evidence that Perez had violated criminal law or department policy or procedure. Placing great emphasis on Jaffee's improper letter, the Ayer District Court lifted the restraining order. Jaffee also wrongfully advised persons that Stack had filed an unsubstantiated report with the Hartford Police Department. He, two days into his "investigation", called Stack's credibility into question and, when Stack took a poly-

graph examination to demonstrate his veracity, Jaffee refused to even read the report thereof. He failed to investigate Officer Perez' alleged alibi witnesses for months and, even then, accepted monosyllabic responses to interrogatories, which his supervisors testified at their depositions was unacceptable conduct.

### CONCLUSION

In toto, the Court finds that the jury was correct in its award of punitive damages, as the underlying purpose of punitive damages—— punishment and deterrence——is met by such an award in this case. However, the $200,000 amount is neither reasonable nor proportionate to the amount of actual harm to Stack and to the general damages he recovered. Thus, following the precedents of *Provost, Lee,* and *Tolbert,* the Court hereby orders remittitur of $175,000. The total award then, if accepted by Plaintiff, would be $27,000.

In the Second Circuit, a court may not simply reduce an award of punitive damages, but must offer the Plaintiff the option of a new trial on that issue. *Vasbinder v. Scott,* 976 F.2d 118, 122 (2d Cir. 1992). Resultingly, on or before August 11, 2003, the Plaintiff shall notify the Court, in writing, if he accepts the amount of remittitur or if he wishes a new trial, limited solely to the issue of punitive damages. The jury would, of necessity, be instructed with regard to the due process ceiling on punitive damages, as found herein, following an analysis of Supreme Court and Second Circuit precedents. Plaintiff did not move for a new trial based on the amount of his compensatory damages award; thus, that issue may not be tried again. Only the punitive damages award may be and, without a correct instruction with regard to the constitutionality of the amount of such an award, the Court and the parties could find themselves again in a situation such as being considered herein.

Should the parties now desire a settlement conference with the Honorable Joan G. Margolis, they should notify this Court of such issue at the very earliest time possible.

SO ORDERED.