07-5327-cv (L)
Thomas v. iStar Financial, Inc.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————————

August Term, 2008

(Argued: February 24, 2009       Decided: December 17, 2010       Amended: July 22, 2011)

Docket No. 07-5327-cv (L), 07-5510-cv (XAP)

————————————

KENNETH J. THOMAS,

*Plaintiff-Appellant-Cross-Appellee*,

— v.—

ISTAR FINANCIAL, INC., a Maryland corporation and ED BARON,

*Defendants-Appellees-Cross-Appellants*.

————————————

B e f o r e :

HALL and LIVINGSTON, *Circuit Judges*, and BIANCO, *District Judge*.[*]

————————————

Kenneth J. Thomas appeals from an order of the United States District Court for the

Southern District of New York (Marrero, *J.*) vacating his punitive damages award in the amount

of $1.6 million and offering him a choice between accepting a lesser award of $190,000 or a new

trial on punitive damages. For the purposes of bringing this and other issues forward on appeal,

---

[*] The Honorable Joseph F. Bianco, of the United States District Court for the Eastern District of New York, sitting by designation.

however, the parties jointly petitioned the district court to reduce Thomas's punitive damages award as a matter of law without offering Thomas the option of a new trial. We need not determine here whether the district court was authorized to grant such relief since we read the parties' joint submission as effectively stipulating to a new jury trial, the result of which was an award in the reduced amount of $190,000, rendering the district court's judgment final. Our jurisdiction thus established, we affirm the decision of the district court that Thomas's original punitive damages award was unconstitutionally excessive. Additionally, we hold that the district court lacked jurisdiction to correct its clerical mistake without first obtaining leave from this Court to do so, but we now grant that leave *nunc pro tunc*. Because the remaining issues raised in both parties' appeals are without merit, we **AFFIRM** the district court's judgment in its entirety.

AFFIRMED.

—————————————

DAVID T. AZRIN (David S. Douglas and Michelle P. Quinn *on the brief*), Gallet Dreyer & Berkey LLP, New York, NY, *for Plaintiff-Appellant-Cross-Appellee*.

BARRY A. GURYAN (A. Jonathan Trafimow, *on the brief*), Epstein Becker & Green, P.C., New York, NY, *for Defendants-Appellees-Cross-Appellants*.

—————————————

*Per Curiam*:

In August 2003, iStar Financial, Inc. ("iStar") fired Kenneth Thomas. A year and a half later, Thomas sued iStar and one of his supervisors there, Ed Baron, (collectively "defendants") for various violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and parallel provisions of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin.

2

Code § 8-101 *et seq.* After a trial in the United States District Court for the Southern District of New York (Marrero, *J.*), a jury found that Thomas's termination was in retaliation for complaints he had made about Baron, and it awarded compensatory and punitive damages. Both sides now appeal numerous issues related to pre-trial, trial, and post-trial proceedings.

Thomas appeals from an order of the district court vacating his punitive damages award in the amount of $1.6 million and offering him a choice between accepting a lesser award of $190,000 or a new trial on punitive damages. For the purposes of bringing this and other issues forward on appeal, the parties jointly petitioned the district court to reduce Thomas's punitive damages award as a matter of law without offering Thomas the option of a new trial. We need not determine whether the district court was authorized to grant such relief since we read the parties' joint submission as effectively stipulating to a new jury trial, the result of which was an award in the reduced amount of $190,000, rendering the district court's judgment final. Our jurisdiction thus established, we affirm the decision of the district court that Thomas's original punitive damages award was unconstitutionally excessive. Additionally, we hold that the district court lacked jurisdiction to correct its clerical mistake without first obtaining leave from this Court to do so, but we now grant that leave *nunc pro tunc*. Because the remaining issues raised in both parties' appeals are without merit, we **AFFIRM** the district court's judgment in its entirety.

## I. Background

In his complaint, Thomas asserted that defendants fired him both because he is African-American and in retaliation for complaints he made about racist treatment at iStar. He also claimed that, while he was employed, defendants created a hostile work environment. The

3

district court granted summary judgment against Thomas on the hostile work environment claim but allowed his discriminatory termination and retaliation claims to go to trial. *Thomas v. iStar Fin., Inc.* ("*Thomas I*"), 438 F. Supp. 2d 348, 368-69 (S.D.N.Y. 2006). A jury subsequently found that defendants were not motivated by racial animus when they fired Thomas, but that they did act in retaliation for previous complaints Thomas had lodged about Baron. It awarded him compensatory damages in the form of front-pay, back-pay, and non-economic pain and suffering. The jury also assessed punitive damages against iStar in the amount of $1.6 million dollars. Post-trial, the district court determined that the punitive damages award was unconstitutionally excessive. *Thomas v. iStar Fin., Inc.* ("*Thomas II*"), 508 F. Supp. 2d 252, 262-64 (S.D.N.Y. 2007). It ordered a conditional remittitur of those damages, *id.* at 264-65, and, after Thomas refused to remit his award voluntarily, scheduled a new trial on the issue. Before the new trial took place, however, the parties filed a joint submission requesting that the district court directly reduce Thomas's punitive damages award as a matter of law and without the option of a new trial. The district court agreed and accordingly ordered entry of final judgment against iStar in the amount of $190,000 in punitive damages. *Thomas v. iStar Fin., Inc.* ("*Thomas III*"), 520 F. Supp. 2d 483, 486 (S.D.N.Y. 2007).

The district court also decided to award Thomas prejudgment interest on his back-pay damages. *Thomas II*, 508 F. Supp. 2d at 264. Although Thomas argued that the New York statutory interest rate should be applied to calculate that award, the court determined the interest should be calculated using the applicable rate under federal law. *Id.* In a subsequent order related to Thomas's remittitur of punitive damages, however, the district court erroneously directed the Clerk of Court to calculate Thomas's prejudgment interest using the New York rate.

4

Order Granting Joint Submission for Reduction of Punitive Damages, Nov. 21, 2007, Dkt. No. 89. When the district court realized its mistake, it issued a corrected order directing the Clerk of Court to rescind the earlier judgment and to calculate the prejudgment interest using the federal rate, as set forth in *Thomas II*. Order Correcting Calculation of Prejudgment Interest, Dec. 7, 2007, Dkt. No. 96. By the time the district court took this action, however, Thomas had already filed a notice of appeal. Notice of Appeal, Nov. 28, 2007, Dkt. No. 92.

## II. Discussion

**<u>Remittitur of Punitive Damages</u>**

On September 7, 2007, the district court conditionally granted defendants' motion for a new trial under Fed R. Civ. P. 59(a) on the issue of punitive damages because it determined that the jury's punitive damages award was unconstitutional.[1] *Thomas II*, 508 F. Supp. 2d at 264-65. It ordered that a new trial on punitive damages would be scheduled unless Thomas agreed within ten days to remit voluntarily his punitive damages award from $1.6 million to $190,000—the maximum amount that the court found to be consistent with the Fifth Amendment's Due Process requirement. *Id.* Before his ten-day election period had run, Thomas moved pursuant to Local Civil Rule 6.3 for reconsideration of the district court's conditional remittitur order. In the alternative, he sought certification of an interlocutory appeal on the issue. The district court denied the motion for reconsideration and refused to certify an appeal. *Thomas v. iStar Fin.,*

---

[1] The district court also granted the defendants' Rule 59(a) motion with respect to damages for "front-pay." *Thomas II*, 508 F. Supp. 2d at 264-65. Thomas does not contest this aspect of the court's ruling.

5

*Inc.*, 520 F. Supp. 2d 478, 482-83 (S.D.N.Y. 2007).[2]  Reaffirming the conditional remittitur, the district court scheduled a new trial on the issue of front-pay and punitive damages to begin April 7, 2008 unless Thomas agreed to remit those awards within the next seven calendar days.  *Id.* at 483.  Four days later, Thomas sent a letter to the district court stating that he declined to accept the remitted amount of damages and elected to proceed to a new trial.  Order Advising Parties of New Trial Scheduled to Commence April 7, 2008, Oct. 9, 2007, Dkt. No. 85.  In preparation for the new trial, the district court convened a status conference with the parties wherein it was apparently suggested and agreed that—if possible—the district court should directly reduce Thomas's punitive damages award to $190,000 as a matter of law without providing the option of a new trial.  Telephone Status Conference, Oct. 25, 2007, Dkt. No. 86.  The parties then filed a joint submission officially urging the district court to enter judgment in the reduced amount of $190,000  and offering putative legal authority for it to do so.  Joint Brief, Nov. 16, 2007, Dkt. No. 87.  The submission argued, in essence, that conditional remittitur was unnecessary with respect to Thomas's punitive damages award because the jury's award of punitive damages did not constitute a finding of fact for the purposes of the Seventh Amendment.  *Id.*  Thomas pledged that if the district court entered final judgment on the punitive damages award along the lines urged in the joint submission, he would accept the remitittur on front-pay so that the case could be closed.  *Id.*  The submission was signed by both parties.  *Id.*  The district court adopted *de facto* the joint submission's reasoning, entered final judgment for, *inter alia*,  $190,000 in

---

[2] Note that in this decision, the district court mistakenly referred to its September 7, 2007 order (*Thomas II*) as having been issued on July 7 of that year, 520 F. Supp. 2d at 479, and cited to an earlier decision in the case rather than the one that was the subject of the motions, *id.* at 479 n.1 (erroneously citing to *Thomas I*, 438 F. Supp. 2d 348 (S.D.N.Y. 2006) instead of *Thomas II*, 508 F. Supp. 2d 252 (S.D.N.Y. 2007)).

punitive damages, and closed the case. *Thomas III*, 520 F. Supp. 2d, at 485-86.[3] Thomas now

appeals the district court's "decision after trial to vacate the jury's punitive damage award."

(Plaintiff-Appellant-Cross-Appellee's Br. 39.)

We write first to address the procedural path and substantive decision by which the

district court reduced the jury's punitive damages award.

Central to our discussion is the Seventh Amendment of the United States Constitution,

which provides that "no fact tried by a jury, shall be otherwise re-examined in any Court of the

United States, than according to the rules of the common law." With respect to jury-awarded

damages, this has traditionally meant that after trial, district courts may not unilaterally reduce

awards that are excessive. *Hetzel v. Prince William Cnty.*, 523 U.S. 208, 211 (1998) (per

curiam).[4] Instead, the procedure consistent with "the rules of the common law" for revisiting

this aspect of a jury's verdict is an order for a new trial.[5] *See Gasperini v. Centr. for Humanities,*

*Inc.*, 518 U.S. 415, 432-33 (1996). Alternatively, though it is not required, a district court may

give the plaintiff the choice of voluntarily remitting his award to a set lesser amount in lieu of a

new trial. *Id.* at 433. This option—have a new trial or voluntarily remit the award—is called a

conditional remittitur. If the plaintiff accepts the remitted amount and forgoes a new trial,

however, the district court's order may not be appealed. *Donovan v. Penn Shipping Co., Inc.*,

---

[3] Note that here the district court again mistakenly referred to *Thomas II* as having been decided in July rather than September. *Thomas III*, 520 F. Supp. 2d at 484.

[4] The same is true for the courts of appeals. *Kennon v. Gilmer*, 131 U.S. 22, 28-30 (1889).

[5] For a thorough explanation of how an order for a new trial comports with the Seventh Amendment see *Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320, 1328 (11th Cir. 1999).

429 U.S. 648, 650 (1977); *see also* Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2815 ("[I]t is now clear that a plaintiff may not appeal the propriety of a remittitur to which he agreed, whether under protest or not.").

With respect to remittiturs, the law of this Circuit does not distinguish between compensatory and punitive damages. Notwithstanding language in *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432, 437 (2001), about the reach of the Seventh Amendment's "Reexamination" Clause in the punitive damages context, this Court has, since *Cooper*—and without discussion of that case—provided plaintiffs with the option of a new trial even where a punitive damages award has been deemed excessive. *See, e.g.*, *Fabri v. United Techs. Int'l, Inc.*, 387 F.3d 109, 125-27 (2d Cir. 2004) (punitive damages award vacated on appeal and the issue remanded for entry of a conditional remittitur); *DiSorbo v. Hoy*, 343 F.3d 172, 185-86, 189 (2d Cir. 2003) (compensatory and punitive damages conditionally remitted on appeal); *see also Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 191 (2d Cir. 2000) (punitive damages conditionally remitted on appeal); *Lee v. Edwards*, 101 F.3d 805, 813 (2d Cir. 1996) (same).[6] This has been so even where the punitive damages award has been held unconstitutionally excessive under the factors set forth in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996). *See Fabri*, 387 F.3d at 124-27; *DiSorbo*, 343 F.3d at 188-89; *Lee*, 101 F.3d at 809-12; *cf. Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1332 (11th Cir. 1999) (noting that the Tenth and Second Circuits have continued to require conditional remittiturs in

---

[6] *Mathie v. Fries*, 121 F.3d 808 (2d Cir. 1997), and *Buckley v. Littell*, 539 F.2d 882 (2d Cir. 1976), are not to the contrary as the damages awards at issue in these cases were determined by district court judges following *bench trials* and therefore do not implicate the Seventh Amendment.

8

cases of unconstitutional punitive damages and that "the Constitution does not prohibit this cautious approach").

In any event, we need not determine whether the district court was obligated to present Thomas with a conditional remittitur in the circumstances of this case since the result the parties sought to obtain through their joint submission was permissible. By petitioning the district court to enter judgment on Thomas's punitive damages in the reduced amount of $190,000, they were seeking to secure appellate review of the district court's underlying determination in *Thomas II* that the jury's award of punitive damages was excessive while at the same time avoiding the risk, time and expense of a new trial. From Thomas's perspective, unless he could proffer new evidence, $190,000 would likely be the largest award he could expect the district court to allow following a second trial—an event that could also, of course, result in a lesser award. For its part, iStar evidently determined that paying $190,000 in punitive damages— should defendants prevail on appeal—was worth avoiding the cost and effort of a new trial, even if a new trial held out the possibility of a smaller post–appeal award. In other words, the parties agreed: Thomas should be able to appeal the district court's holding that an award of $1.6 million in punitive damages was unconstitutionally excessive; if Thomas prevailed, he would have that original award reinstated; but if, on the other hand, *Thomas II* was affirmed, iStar would pay $190,000 in punitive damages.

We give force to the parties' agreement by construing their joint submission to the district court as a stipulation to the effect that the result of a new trial is a jury award of $190,000 in punitive damages. Judgment is entered on that award, and from that judgment an appeal may be taken. *Cf.* Wright, Miller & Kane, *supra*, at § 3915.5 (citing *Deas v. PACCAR, Inc.*, 775 F.2d

9

1498, 1503 (11th Cir. 1985) (exercising appellate jurisdiction after plaintiff moved for and received adverse judgment n.o.v. rather than face a new trial), and *Nat'l Polymer Prods., Inc. v. Borg-Warner Corp.*, 660 F.2d 171, 176-77 (6th Cir. 1981) (same)) ("A party who is willing to gamble on review of a new trial order . . . may be able to win the right to appeal by soliciting entry of an adverse final judgment."). *Donovan*'s prohibition on appeals from accepted remittiturs—to the extent a conditional remittitur is required, in the first instance, when the award is one of punitive, rather than compensatory, damages—is not implicated because of the defendants' role here in structuring the process by which final judgment was entered.

Based on our construction of the parties' stipulation, we reach the merits of the district court's order in *Thomas II* conditionally remitting the original jury award of $1.6 million in punitive damages. If we affirm that decision, Thomas has already elected a new trial and stipulated to its result; if, on the other hand, we determine that $1.6 million in punitive damages was not unconstitutionally excessive, the original award must be reinstated. For the reasons that follow we affirm.

We review *de novo* a district court's determination of the constitutionality of a punitive damages award. *Cooper Indus.*, 532 U.S. at 436. The framework for assessing whether a punitive damages award violates due process is well established. In *Gore*, the Supreme Court set down three "guideposts" for courts reviewing such awards: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003) (citing *Gore*, 517 U.S. at

10

575).  The Court has held, however, that "[p]erhaps the most important indicium of the

reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's

conduct," which "reflects the accepted view that some wrongs are more blameworthy than

others."  *Gore*, 517 U.S. at 575.  In assessing the reprehensibility of a defendant's conduct, the

Supreme Court has instructed that courts should

> consider[] whether: the harm caused was physical as opposed to economic; the
> tortious conduct evinced an indifference to or a reckless disregard of the health or
> safety of others; the target of the conduct had financial vulnerability; the conduct
> involved repeated actions or was an isolated incident; and the harm was the result
> of intentional malice, trickery, or deceit, or mere accident.

*Campbell*, 538 U.S. at 419.  Although the type of harm is surely relevant, purely economic harm

can merit the imposition of a punitive damages award, *see Motorola Credit Corp. v. Uzan*, 509

F.3d 74, 87 (2d Cir. 2007), and some courts have noted the relative reprehensibility of

intentional discrimination as distinguished from some other forms of purely economic injury,

*see, e.g.*, *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1043-44 (9th Cir. 2003).

The record in this case supports the district court's determination that an award of $1.6

million in punitive damages was excessive.  It is clear that iStar's conduct did not result in

physical injury to Thomas, nor did it evince an indifference to or reckless disregard for the health

or safety of others.  *See Thomas II*, 508 F. Supp. 2d at 262 ("This is not a case involving violence

or the threat of violence.").  Crediting the jury's verdict, however, leads to the conclusion that

iStar's conduct was at the very least "more than merely negligent," *id.*, and iStar may have

risked harm to other employees by failing to respond to complaints regarding Baron's conduct,

*see id.* ("[E]vidence was presented at trial that Baron had 'targeted' other black employees and

that some of those employees did complain with no action being taken.").  Finally, the harm to

11

Thomas did not arise from a single discrete act, but occurred over a period of time. At bottom, however, taking all the circumstances of the case into account, iStar's conduct, though undeniably reprehensible, was insufficiently reprehensible to justify a punitive damages award in significant excess of his compensatory damages award.

Prior to the district court's remittitur of the compensatory damages award, the original punitive damages award of $1.6 million resulted in a punitive-to-compensatory-damages ratio of approximately 3.6:1. Taking into account the court's remittitur of Thomas's compensatory damages award—which Thomas does not challenge on appeal—that ratio rises to approximately 5.7:1. While this ratio is not *per se* unconstitutional, the Supreme Court has "concluded that an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Campbell*, 538 U.S. at 425. There are, however, "no rigid benchmarks" for this analysis, and "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Id.* ("The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and harm to the plaintiff."). We agree with the district court's conclusion that, taking into account the underlying facts in this case, Thomas "was awarded a very substantial amount in compensatory damages." *Thomas II*, 508 F. Supp. 2d at 263. This factor weighs heavily in favor of a punitive damages award equal to or less than the remitted compensatory damages award.

As to *Gore*'s third guidepost, the New York City Human Rights Law ("NYCHRL") permits the imposition of civil fines of up to $250,000 for an "unlawful discriminatory practice [that] was the result of the respondent's willful, wanton or malicious act," and $125,000 absent

evidence of willful, wanton, or malicious behavior. N.Y.C. Admin. Code § 8-126(a). Although, again, the ratio of the jury's punitive damages award to this civil penalty does not render the award *per se* unconstitutional, the substantial size of the jury's punitive damages award as compared to the relevant civil fine indicates that the award was excessive. Lastly, we note that most of the bevy of cases cited by the parties for the proposition that the circumstances of this case require either a higher or lower award are inapposite. This is due either to differing factual circumstances or the existence of a statutory damages cap not present here. *Cf. Zakre v. Norddeutsche Landesbank Girozentrale*, 541 F. Supp. 2d 555, 565 (S.D.N.Y. 2008) (noting, in employment discrimination case, that "[b]ecause Title VII has a cap on punitive damages, and the [New York State Human Rights Law] does not provide for punitive damages, there is not a large pool of relevant cases, those with punitive damages awards under the [NYCHRL]"); *see generally TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 457 (1993) (noting that "[b]ecause no two cases are truly identical, meaningful comparisons of such awards are difficult to make," and "[a]s an analytical approach to assessing a particular award . . . we are skeptical").

On balance, the moderate level of reprehensibility of iStar's conduct, the large compensatory damages award, and the relevant case law lead us to agree with the district court that the jury's original punitive damages award of $1.6 million was excessive. The district court's order that Thomas submit to a new trial on the issue of punitive damages if he would not agree to remit his punitive damages award to $190,000 is therefore affirmed. Because Thomas has already elected a new trial and stipulated to a fixed award resulting therefrom, *see supra*, the part of the district court's final judgment directing iStar to pay Thomas $190,000 is necessarily affirmed.

13

**Prejudgment Interest**

Thomas also claims that the district court should have ordered prejudgment interest on his compensatory damages to be calculated based on the New York state interest rate rather than the lower federal interest rate. For support he cites *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998), for the proposition that "federal law does not apply to the calculation of prejudgment interest on supplemental state law claims."

This argument is without merit. Whereas *Marfia* concerned damages on state law claims alone (the jury having found for the defendant on all federal claims), *id.* at 85, Thomas received an award of damages that compensated for both federal and state claims without distinguishing between the two. As the district court stated, and we now hold, judgments that are based on both state and federal law with respect to which no distinction is drawn shall have applicable interest calculated at the federal interest rate. *See Thomas II*, 508 F. Supp. 2d at 264. In so holding, we adopt the persuasive practice of a number of district courts in this Circuit that have previously considered the issue. *See Kuper v. Empire Blue Cross and Blue Shield*, No. 99 Civ. 1190, 2003 WL 23350111, at *3-*5 (S.D.N.Y. Dec. 18, 2003) (citing cases), *adopted by* 2004 WL 97685 (S.D.N.Y. Jan. 20, 2004); *see also Press v. Concord Mortg. Corp.*, No. 08 Civ. 9497, 2009 WL 6758998, at *9 (S.D.N.Y. Dec. 7, 2009); *Kinneary v. City of N.Y.*, 536 F. Supp. 2d 326, 334 (S.D.N.Y. 2008), *rev'd on other grounds by* 601 F.3d 151 (2d Cir. 2010); *cf. Genao v. Blessed Sacrament Sch.*, No. 07 CV 3979, 2009 WL 3171951, at *10 & n.21 (E.D.N.Y. Oct. 1, 2009) (stating that "where liability exists under both the [Fair Labor Standards Act] and New York

Labor Law, it is more appropriate to [use] the federal interest rate" for prejudgment interest, but noting that at least two district courts have used the state interest rate in FLSA cases).[7]

Thomas argues that even if the federal rate should have applied, the district court was without jurisdiction to impose that rate by corrected order in December 2007 because an appeal from the case had already been docketed. Thomas is correct in this respect. Federal Rule of Civil Procedure 60(a) does in fact require a district court to seek leave from this Court for the correction of a clerical mistake where an appeal is already pending. Thus, unless we grant permission for the district court to correct its mistake, the December order is without effect. *Cooper v. Coregis Ins. Org.*, No. 96-9250, 1997 WL 589907, at *2 (2d Cir. Sept. 23, 1997) (unpublished opinion); *see also Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 527 (2d Cir. 1990); *Leonhard v. United States*, 633 F.2d 599, 609-10 (2d Cir. 1980). That said,

---

[7] The cases cited in *Genao* that applied the New York prejudgment interest rate rather than the federal rate are distinguishable. Both involved the calculation of prejudgment interest for damages under the FLSA and New York Labor Law where the plaintiff received liquidated damages in addition to lost wages. *Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 WL 1373118, at *1 (S.D.N.Y. May 8, 2007); *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 340-41 (S.D.N.Y. 2005). Because the FLSA does not allow for any prejudgment interest where plaintiffs also receive liquidated damages, *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988), these courts awarded prejudgment interest solely on the basis of the New York Labor Law. *Heng Chan*, 2007 WL 1373118, at *9; *Doo Nam Yang*, 427 F. Supp. 2d at 342. In other words, these cases are more in line with *Marfia* than with any of those cited above. They stand for the proposition that where prejudgment interest can only be awarded on the basis of what is solely a state claim, it is appropriate to use the state interest rate.

15

however, we now grant the district court leave to correct its clerical mistake *nunc pro tunc*.[8]

*Cooper*, 1997 WL 589907, at *2.

**Parties' Other Claims**

In addition to the claims already addressed, the parties raise a variety of other claims, which require only brief discussion. Thomas asserts that the district court erred by: (1) deciding his hostile work environment claim on summary judgment; and (2) directing a verdict against him on the issue of certain consequential damages. The defendants claim the court improperly: (1) refused them summary judgment or judgment as a matter of law on Thomas's retaliation claim; (2) allowed the issue of punitive damages to reach the jury; (3) admitted certain testimonial evidence, including that from Thomas's expert witness; and (4) allowed the jury to determine Thomas's lost wages rather than determining the issue itself.

With respect to Thomas's claims, the district court did not err. It properly granted summary judgment on his hostile work environment claim because no reasonable jury could have found the "occasional and isolated" events Thomas complained of, *Thomas I*, 438 F. Supp. 2d at 363, were severe or pervasive enough to create an abusive work environment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Likewise, evidence that Thomas had asked for an advance on his bonus some eight months before he was fired was an insufficient basis for a reasonable jury to find that damages related to Thomas's inability to close on a house were

---

[8] There can be no question that the error was genuinely clerical. The district court's order directing application of the New York rate came more than two months after it expressly determined that the federal rate should apply. *Compare Thomas II*, 508 F. Supp. 2d at 264, *with* Order Granting Joint Submission for Reduction of Punitive Damages, Nov. 21, 2007, Dkt. No. 89.

16

reasonably foreseeable to the defendants. *See Hadley v. Baxendale*, 9 Exch 341, 156 ER 145 (Eng. 1854).

Defendants' claims on appeal are also without merit. As the district court noted in its denial of summary judgment on the retaliation claim, Thomas offered evidence from which a jury could infer that Baron harbored a retaliatory animus and was involved in the company's decision to fire Thomas. *Thomas I*, 438 F. Supp. 2d at 366-67. Similarly, the record reveals sufficient evidence for a jury to find that iStar was reckless—and thus susceptible to punitive damages—when among other things the evidence reflected that it allowed Baron to participate in the decision to terminate Thomas when senior officials at the company knew the two men did not get along. It is also clear that the district court did not abuse its discretion with respect to the testimony it allowed—expert, *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999), or otherwise, *see Old Chief v. United States*, 519 U.S. 172, 174 n.1 (1997). Finally, while defendants are correct that lost wages under Title VII are equitable and, therefore, need not be tried by a jury,[9] *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 157-58 (2d Cir. 2001), economic damages under the statute may nevertheless be tried by a jury if both sides consent. *Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 295-96 (S.D.N.Y. 2008) (Lynch, *J.*). Such consent may be express or implied. *Id.* at 296 ("[D]efendant's silence in the face of plaintiff's proposed cure [gives] rise to a constructive consent to try the claims to the jury.").

---

[9] Although we have never addressed the issue, defendants may be correct that federal courts should also treat as equitable damages those damages sought for violations of pendent state law claims that are "virtually identical" to Title VII claims. *Saunders v. Madison Square Garden, L.P.*, 06 Civ. 589, slip op. at 3 (S.D.N.Y. Sept. 4, 2007) (Lynch, *J.*). Because the defendants consented to a jury trial on this aspect of damages, however, we need not resolve the issue here.

17

Because the defendants cannot point to anywhere in the record where they objected to the district court submitting the issue of back-pay damages to the jury, they have constructively consented to the jury trying that issue and have waived any challenge to it.

### III.  Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

18